Hemphill, Ch. J.
The appellant in his brief states that the question presented by the record or the one intended to be settled by the appeal is "whether a married woman can contract by the execution of a promissory note jointly with her husband, so as to make her separate property liable to the credit or by a proceeding in rem for that purpose, the husband having no community or separate property from which the debt can be enforced.” The question is one of considerable importance, and has been elucidated in a logical and elaborate argument of the counsel in support of the affirmative of the position.
In the investigation I shall not, at least at any length, advert to the powers or disabilities of the wife under the Spanish system of jurisprudence in relation to her separate property. The argument has proceeded on the supposition that the powers and consequent liabilities of the wife in the case under consideration are to be determined by the rules of the common law as modified by the principles of equity and the statutory provisions on the subject of marital rights. At common law the husband and wife are identified and treated as one person. The legal existence of the wife as a distinct person is suspended or incorporated in that of her husband, under whose protection and cover she performs everything. By the marriage all her rights to personal property vest in him absolutely, and a freehold estate in her realty continuing during their joint lives, and by possibility during his life, should he survive; and the wife is incapable of contracting or acting as a feme sole, and of suing or being sued as such. (1 Bl. Comm., 443; 2 Story Eq., sec. 1367; 8 T. R., 547; Roper on Husband and Wife, 2 vol., 119.) The husband could not grant anything to the wife or enter into covenant with her, for that would admit her distinct separate existence; nor could she bind him by any contract or incur any debt without his consent, with certain exceptions, in which there was a legal implication of her authority to act as his agent and of his liability to pay for necessaries. (2 Roper, 111.)
But in equity the wife’s individuality was acknowledged, and her capacity to hold a separate estate with the incidental power of control, management, and disposal recognized; but in relation to the extent of her power, or rather the mode of its exercise, there has been a considerable diversity of opinion. The decisions of the English courts on the subject were for a long time wavering and unsettled; but it seems now to be established law that a wife who has an absolute interest in or power over her separate estate can dispose of it in any manner capable of transferring it; that her power of disposition is incidental to the estate she holds in the property, and she can dispose of it in the same manner and to the same extent as a feme sole. (2 Story Eq., sec. 1390; 2 Roper, 177-198.)
I shall not attempt to travel through the numerous authorities in which the power of femes covert to charge or dispose of estates limited to their separate use lias been discussed. They have doubtless been frequently canvassed, and were critically and elaborately reviewed by Chancellor Kent, hi the Methodist Episcopal Church v. Jacques, (3 Johns. Ch. R., 78,) and by Chancellor Dessaussure in Ewing v. Smith. (3 Dess. R., 477.) In the former ease the Chancellor, after a most laborious examination of the cases for nearly a century, was of opinion that the decisions were so floating and contradictory as to leave him at liberty” to adoiit the true principle, viz, that a feme covert was not, as to her separate property, to be deemed a, feme sole, but only a. feme sole sub modo, or to the extent of the power clearly given by the deed of settlement. That instead of the wife having an absolute power of disposition, unless specially restrained by the instrument creating her estate, the converse of the proposition would be more correct, viz, that she has no power except what is specially *79 given, and to be exercised only in the mode which is proscribed. That her incapacity was general, and the exception was to be taken strictly and shown in every casi', because it is against the general policy and immemorial doctrine of tlie law. &a.
Tile case was reviewed in the Court of Errors, and the principle regarded by the chancellor as the true one was not sustained. It was declared that a fame covert, in regard to her separate property, was to be regarded in equity as a fame sole, and might dispose of it without the assent and concurrence of the trustee, unless specially restrained by the instrument under which she acquired her separate estate, and that though a particular mode of disposition wits specifically pointed out in the deed of settlement, it would not preclude the wife from adopting any other mode unless specially restrained by tile deed of settlement to the adoption of a particular mode. (17 Johns. R., 548; 2 Kent Comm., 166.) In Vanderheiden v. Mallory (1 Comstock R., 462) it was held that as a consequence of the established principle that a married woman may take and enjoy property to her separate use, courts of equity enable her to deal with it as a feme sole. The right of disposition or appointment is an incident belonging to such interest and power. She may sell, pledge, or incumber her separate estate, when she shows an intention so to dispose of it, in the same manner as if she were a feme sole, unless specially restrained by the instrument under which she acquires it; and every security thereon executed by her is to be deemed an appointment pro tanto of the separate estate.” (22 Wend. R., 526.)
Chancellor Dessaussure, after tracing the doctrine in relation to the power of femes covert over their separate estates through all the eases from its first appearance in courts of equity, held, as the result of the examination, that under the authority of adjudged eases a feme covert entitled to a separate estate must be regarded as a feme sole to the extent of her separate property, and that the jus disponendi followed as a necessary incident; that she could give it to whom she pleased or charge it with tire debts of her husband, where no undue control was used over her, and her disposition will be enforced and sanctioned by the courts, even without the assent of trustees, unless that assent he specially made necessary by the deed or will creating the estate; and this power of disposal is not restricted by the deed or will pointing out a particular mode of charging or disposing the particular estate, unless any other mode is expressly negatived. On appeal it was held that the doctrines, as deduced by the chancellor from the English cases, were supported by the decisions, hut that the court was not compelled, in applying principles to cases as they occur, to implicitly follow the construction given to them in similar cases by the judge of a foreign court, and obey his decisions as verba magistri; that the question should he regarded as res integra in that Slate; that the decisions were contradictory, and that the safer principle to be established was that a married woman cannot part with her separate estate or charge it in any way without an examination; that by marriage she loses all the powers of a feme sole; that a separate estate does not confer all those powers, and therefore the power of appointing such estate must be expressly given and the prescribed mode be strictly pursued. (Ewing v. Smith, 3 Dess, R., 462.) This is regarded as the settled law of that State, though attempts have been made., but unsuccessfully, to enlarge the powers of married women over their separate estates and to introduce the principles of the English decisions. (Reed v. Lamar, 1 Strob. Eq. R., 26; 1 Chev. R., 136.)
Some of the States have adopted the rules settled by the adjudications in England and Hew York, and the decisions of others have favored the doctrines sustained by South Carolina, and which was held by Chancellor Kent in the case already cited. (Jacques v. The Methodist Episcopal Church.)
Tile settled rule of the English and Hew York cases, that the feme covert’s power of disposition over her separate estate is not to be restricted to any particular mode of disposition pointed out in the deed, unless other modes are expressly negatived, is applicable only where she has the absolute property or *80 entire interest in the estate; for if this be but partial, as, for instance, for life only, with the power of appointment by will, she cannot dispose of the property except in conformity with the power conferred. (2 Roper on Husband and Wife, 199, 220.)
The general power of a feme covert over her separate estate having been examined,' though in a cursory manner, we proceed to the question more particularly for decision, viz, the liability of the separate property of a married woman for contracts, debts, or charges created or incurred by her during coverture. At common law she could make no contracts binding either her person or her estate; and in equity she cannot make a contract to bind her person, but only her estate. The doctrine seems to be (in those courts where her power of disposal is regarded as incident of her right to the property) that in equity her separate estate is not liable for the payment of her general personal engagements or debts, (2 Roper on Husband and Wife, 225, 238, 241 ; 2 Story, Eq., sec. 1398;) but her separate property will be held liable for the debts, charges, and incumbrances which she does expressly or by implication charge thereon. (1 Brown Ch. R., 16, 20; 14 Ves. R., 302; 2 Roper on Husband and Wife, 240. 241, 247, 248.) The difficulty is in ascertaining what circumstances, in the absence of any positive expression of intention to charge her separate estate, shall be deemed sufficient to create such charge, and what to create only a general debt. There must be an intention to charge the estate; otherwise tire debt will not affect it. (2 Story Eq., sec. 1400; 1 Comstock R., p. 462.)
The doctrines on the subject of the disabilities of a feme covert at common law, and her powers in equity to charge her separate estate, and what shall be sufficient evidence of her intention to render it liable, wore stated with great precision and clearness in the case of Mylue & Murray v. Barlee. (3 K. R., 207; 9 Cond. Eng. Ch. R., 6.) The question in the case was whether a feme covert living a part from her husband could bind her separate estate, and in respect of it be sued as a feme sole for law expenses upon her retainer and promise to pay merely, but without any more formal instrument or obligation; for it was considered upon the authorities, beyond doubt, that had a bond been given to the solicitor the estate would have been liable and the wife suable upon the instrument. The Lord Chancellor said: “ That at law a feme covert cannot in any way be sued even for necessaries, is certain. Bind herself or her husband by specialty she cannot, and although living with him or apart, whether on an insufficient or an unpaid allowance, she may so far bind him that those who furnish her with articles of subsistence may sue him ; yet even in respect of these she is free from all suit. Her separate existence is not contemplated; it is merged by the coverture in that of the husband.” This position of disability or immunity of the wife was not always recognized at law'. In Corbett v. Poelnitz (1 T. R., 5) it was held that an action would lie against a wife who had a separate estate and living apart from her husband received credit upon that estate. But this case was overruled on the fullest consideration and the unanimous determination of all the judges, in Marshall v. Rutton, (8 T. R., 545; 2 Roper 229,) and at common law a wife cannot be sued by reason of her having separate property and living apart from her husband. But in equity the separate existence of the wife, both as regards her liability and her right, is abundantly acknowledged ; not that her person, but that her property in ay be made liable. That in Hulme v. Tenant (1 Bro. Ch. Cas., 16) a bond in which the husband and wife bad joined was allowed to charge the wife’s separate estate, though till then the better opinion seemed to be that the wife could only bind the separate estate by a direct charge upon it; and in Heatly v. Thomas (15 Ves. R., 596) and Bullpin v. Clarke (17 Ves. R., 365) the wife’s separate estate was held to be charged by a promissory note for money lent to her, which at law never could have charged the husband in any way, directly nor indirectly. The foundation of the doctrine was held to be in the uncontrolled power which the wife bad over her separate estate, and the only question is as to her intention to charge it. If the wife did any act *81 directly charging the estate, no doubt could exist; and if by any reference to the estate it could be gathered that such was her intent, the same conclusion followed. Thus, if she executed a bond or note or accepted a bill, as these acts would be nugatory unless done with reference to her separate estate, she must be regarded as having intended to charge her separate estate; since in no other way could the instruments have any validity or operation, in the same manner as an instrument which can mean nothing, if it means not to execute a power, has been held to be made in execution of that power, though no direct reference is made to the power.
The Lord Chancellor then ridicules the distinction that the feme covert can be made liable as to her separate estate on written instruments absolutely void at law, and yet not be affected by her verbal engagements or agreements, though the latter may be for supplies necessary to her maintenance, while the former may be given for money furnished to squander at play; and it was held that her separate estate was liable to her solicitor’s bill for costs.
It must be confessed that the distinction between the particular engagements of a feme covert chargeable upon her separate estate and her general personal engagements is not satisfactory. The reasonable presumption is that when a married woman contracts a debt she means to pay it; and it is difficult to draw any satisfactory distinction between such debts as are chargeable upon her separate estate, when no intention is expressed to that effect, and such debts as are not chargeable, on the ground of their being mere general engagements.
Without dwelling upon the difficulty and subtlety of the distinctions, it will be sufficient to say that upon the English authorities it is well established that if a feme covert give a promissory note or an acceptance or a bond, or joins in a bond with her husband to pay his debts, these shall constitute prima facie evidence to charge her separate estate, without any distinct circumstance or expression or positive agreement to indicate her intention. (2 Atk. R., 68; 2 Story Eq., secs. 1400, 1401; 9 Cond. Eng. Ch. R., 8.)
Had the property in this case been settled to the sole and separate use of the wife by deed, the note in question would have constituted, according to the authorities cited, prima facie, a charge on her separate estate; and this action to subject the property, the corpus, or the profits of the estate, as the ease might require, could, under these authorities, well be sustained. The question then arises whether such action will lie, on the facts stated, to render liable the property held by operation of law by the wife in her separate right. The petition does not show when the marriage was celebrated, or whether the wife’s right to separate property vested in her by law or by marriage contract; and .if that be the case, whether it was an ante or post nuptial agreement. On the supposition that the marital rights of the parties were fixed by the provisions of the act of 1840, it would, perhaps, aid the inquiry, or at least render it more intelligible, by stating the substance of the statutory regulations on the subject matter. The third section declares that neither the lands nor slaves which the wife may own at the time of the marriage, nor the lands nor slaves to which she may acquire during coverture any right, title, or claim by gift, devise, or descent, nor the increase of such slaves in each ease, nor the paraphernalia, &c., shall, by virtue of the marriage, become the property of the husband, but shall remain the separate property of the wife; provided, however, that during the continuance of the marriage the husband shall have the sole management of such lands and slaves. ‘By the fourth section it was declared that all the property which the husband or wife may bring into the marriage, except land and slaves and the wife’s paraphernalia, and all the property acquired during the marriage, except such land or slaves or their increase as may be .acquired by either party by gift, devise, or descent, and except also the wife’s paraphernalia, &c., shall be the common property of the husband and wife. It shall first be liable for all the debts contracted by the husband during *82 the marriage, and for debts contracted by the wife for necessaries during the same time, &c.
These provisions were superinduced upon tire repeal in the same statute of the laws which, under a different system, had regulated the rights of marriage. They bear a close resemblance and affinity to those which by the same act were abolished, and the obvious purpose of the statute was to preserve from the wreck of the Spanish system of jurisprudence those rules, with some modifications, which regarded the matrimonial union, so far as property was concerned, as a species of partnership, and in which each partner might have separate estates or property, as well as a common stock of acquisitions and gains. They have no analogy to the strict principles of the common law, and they exclude ail such rules and doctrines as merge the individuality of the wife in the person of the husband; at least so far as the rights of the parties to property is in question, and which preclude the idea that the wife may have a separate estate and interests. The material change in the law was in augmenting the amount of community property, and thus diminishing the amount belonging to the parties in their separate rights. The wife, under the former laws, notwithstanding her separate estate, was deprived of the exercise of many of her civil rights. She could not, as a general rule, make contracts, &c., without the cousent of her husband, and she was especially prohibited from becoming his security. This disability to become security, with certain exceptions not necessary to be noticed, was an immunity common to the sex, and applicable to femes sole, as well as to married women. (Diccionario, Verbo Muger y Muger casada, Febrero, vol. 2, pp. 422-606.)
I have no intention, in the present case, of adverting to the regulations by which the liabilities of the parties under our former system would have been determined. These can be discussed where questions arising under them are presented for review and decision.
The extent of the power which a married woman can lawfully exercise over her separate property under the act of 1840 is somewhat difficult of definition. The law did not until a subsequent period point out any mode for the exercise of her power of disposition. The restrictions of former laws had been swept out of existence. The disabilities of coverture, under the common law, as affecting her property, were not introduced, at least to but a limited extent. She possessed rights incompatible with the principles and provisions of that system, except under the modifications introduced by courts of equity for the regulation of the separate estates of married women. If the decisions of these courts in relation to such estates furnish light for our safe guidance in the obscurities of the subject, they show that the right of holding separate property vested the wife necessarily with the power of contracting in relation to such property. This was universally admitted, though by some courts her power was restricted to the mode pointed out in the deed creating the estate. There ivas no mode prescribed by the act of 1840, and her power of disposition, according to the authorities, was uncontrolled. Nor can I assent to the doctrine that the mode of voluntary alienation, being prescribed by subsequent statutes, deprived the wife of power of contracting for supplies necessary for the protection and preservation of her properly, and consequent liability of the property for the payment of such charges. The distinction between the separate property of the wife and property limited to her sole and separate use is not recognized by our laws. The property denominated separate is regarded as limited to her sole and separate use, and necessarily excludes the common-law rights of the husband in such property by virtue of the coverture.
The husband has, by the act of 1840, the sole management, during the continuance of the marriage, of the separate property of the wife. This cannot be construed to vest in him the common-law estate or interest in the lands of the wife. He is not entitled to a freehold estate, to continue during their *83 joint lives, and by possibility longer; or to receive the rents and profits for his own use; or, in short, any such interest as he can voluntarily alienate, or which may be sold under execution for the payment of his debts, or which will authorize the commission of waste, all remedy against him being suspended by the coverture. (2 Kent, 131.) No such interest was conferred by the statute; and if ho have not the common-law estate which vests in the husband jure uxoris in the rents and profits of the lands held by the wife in fee, can he have any except as her agent for the management and control of property belonging to her in her separate right by law, and which is now protected under the guarantees of the Constitution? And is not this estate thus controlled by the agent subject to liabilities for charges and supplies necessary or beneficial to the estate and for the support of the wife and family when the husband is without means or ability for that purpose? And is it material whether the debt be contracted by the husband, acting by law as the trustee of the wife, the real owner and beneficiary of the property? It may be said that anterior to the statute of 1848, subjecting, in express terms, the separate estate of the wife to necessary charges, a special mode being pointed out bylaw for the alienation of the wife’s property and effects, all others were prohibited, and that neither the husband nor the wife could by their acts incumber her estate and render it indirectly under execution liable to sale in a mode not prescribed by law. The restriction contended for on the wife’s power of charging or disposing of her separate estate, if permitted to operate to the full extent, would he productive of the greatest mischief and injury to her separate interests. The statute embraces not only lands and slaves, but all “other effects” the separate property of the wife. If none of her effects can be disposed of but by acknowledgment before a public officer, can the crops produced upon her lands be alienated in any other mode? Tiie cotton, corn, and sugar are the effects of the wife, (on tiie supposition that the proceeds of tiie separate property of the partners belong to them respectively, and do not fall into the common stock of gain;) and if the statute be strictly construed as depriving the wife of all power over her separate estate, except exercised in conformity with the mode prescribed, can a sale of these effects be valid if not acknowleged before the public magistrate ? It may be said that the legal power of managing the property authorizes the husband to receive the hire, rents, proceeds, and profits of the separate property, and to dispose of the crops, &c., without the necessity of official sanction. The husband often or generally receives the rents and profits of separate estates in equity; but this is from the presumed consent and acquiescence of the wife, who, having the power of disposal over her separate estate, can give the rents and profits to her husband. When such consent is given or is presumed, the husband will not be chargeable; but if no such consent be given, the wife will be entitled to reimbursement for the whole of such receipts. (9 Ves. R., 383 ; 3 Bro. Ch. Cas., 441; 4 Ves. R., 146; 16 Id., 126; 2 Id., 663; 2 Ves. Jun., 489, 716; 2 P. Wms. 82 ; 4 Bro. Ch. Cas., 326; 2 Roper, 220;)
The right of the wife to separate property created and sanctioned by law is now guaranteed by the Constitucion. Such laws as have for then object the preservation of the estate and the wife’s rights from the influence of her affection for her husband, or from his fraud, oppression, and circumvention, or that of others, should be enforced according to their spirit and intention, but not so construed as to deprive tile wife, or the husband as her legal agent, of the power of contracting for the supplies necessary for the use of such property and for the support of the wife and family in the absence of other means, and of rendering such property liable to that extent. And wore such the plain intention of the law, its legal validity, as .against an estate under the protection of the Constitution, would be extremly questionable. The statute provides for voluntary alienations, and was intended to protect the wife from succumbing with too great facility to the operation of influences detrimental to her rights, and to ascertain whether her assent was altogether *84 voluntary. Its influence is salutary; but it was intended to operate only on alienations in pais. Charges upon the estate, necessary for its improvement, preservation, &c., are not within the mischief intended to be provided against by the statute. And if the necessity or propriety of such charges is scrutinized before the property be rendered liable, as doubtless they should be, the estate will be more effectually shielded under the protection of the equitable powers of the court than they could be under the ordeal of a voluntary but private examination before the public officer.
The proceeds of the separate property of the wife are added to and form a portion of her separate property; or they belong to the husband by the gift of the wife; or they are added to the common stock of gains. If they are the private property of the husband or community property, they are liable for debts contracted by him during the marriage; and if they accrue to the wife in her separate right, they can undoubtedly be subjected in equity to the payment of necessary and reasonable charges against the estate. It cannot be supposed that the private property of one of the partners or the common stock can be appropriated to the. support and improvement of the private property of the other; and if there be no common property, and the husband be insolvent,the separate estate of the wife must bear its own charges.
It is not necessary in this ease to define what shall be common or what separate property, and whether the profits and improvements of the private property of the partners become common property or not; for whether the rents and profits be common or private property, they can be subjected by a proper proceeding to contracts made for their benefit and rise. That the proceeds of the separate property of the wife should be applied to her support and that of her family, and that this is consequently subject to liabilities for that purpose, is manifest from the 10th section of the act of 1840, which declares that should the husbaud fail or refuse to support his wife from the proceeds of the land or slaves she may hare, or to educate her children as the fortune of the wife would justify, she may in either case complain to the County Court, who, upon satisfactory proof, shall decree that so much of such proceeds shall bo paid to the wife for the support of herself and the nurture and education of her children as the court may deem necessary.
In this case it is averred that the husband has no separate property, and that there is none belonging to the community.
The allegations are in some degree inconsistent, as it is first stated that the supplies were purchased for the use of his plantation, &o. His wife’s plantation was evidently intended, as it is afterwards averred that he is insolvent or has no separate property. Were this case controlled by the decisions of the English and other courts which hold the power of disposition by a feme covert to be incident to her right of separate property, tho question of the liability of the property would be easy of solution. The execution of the note would be evidence of her intention to charge the. estate; and this ascertained, its liability would be unquestionable.
But the separate estate of the wife would be liable, on the facts presented in this case, by the principles of those adjudications which restrict the power of the feme covert to incumber her separate estate to the particular mode prescribed in the instrument by which such estate is created. In South Carolina, whore this doctrine has been maintained for half a century and perhaps longer, it is held that they have modified the English rules so far only as to disable the wife from charging by her own act merely the separate estate, without an examination by the court into the necessity and propriety of the charge. “If she be under the necessity of supporting herself on the credit of the separate estate, she may do so, as in England.' But the court, before making her estate liable, will look into the circumstances of the husband, and be satisfied that the necessity existed, and that the goods furnished *85 or money advanced was proper in her circumstances.” See the case of Maywood & Patterson v. Johnson and others, (1 Hill Ch. R.,) where the equities of a creditor to charge the separate estate of a wife are fully discussed. In Carter v. Everligh and Wife the husband, acting as manager of the separate estate of the wife, had purchased a saw-gin for the use of the estate, of which it had the benefit. The estate was held liable for the gin, though the husband had given his own note for the gin, and the vendor, believing him the owner of the property, had sued the note and pursued the husband to insolvency. (4 Dess. R., 19; Dess., 591.) In Clark v. Makerma and Wife (Chev. Ch. R., 163) property was settled on an intended wife, to be her exclusive property and at her disposal, without being subject to debts of her intended husband or to any interference by him, but to be first liable for her own debts and contracts: Held, to be liable for her note given for family supplies without looking into the necessity or propriety of the expenditure. This was a departure, to some extent, from the rule laid down in former cases, but this was fully restored in the subsequent case of Reid v. Lamar. (1 Strobh. Eq. B., 27.)
Note 24. — Black v. Brvan, 13 T., 453.
Note *25. — Magee v. White, 23 T., 180; Haynes v. Stovall, 23 T., 625; Trimble v. Miller, 24 T., 214; Farr v. Wright et al.t 27 T., 96; Covington v. Burleson, 28 T., 368; Menard v. Sydnor, 29 T., 257; Stansburyv. Nichols, 30 T., 145; Rhodes v. G-ibbs, 39 T., 432: Grant v Whittlesey, 42 T., 320.
Note 26. — Hollis etal., v. Francois et at., post, 195.
The distinction in some of the cases exempting the estate from liability because credit is given to the husband not the wife is frivolous, and founded on no principle. The important question is whether the supplies were for. the benefit of the separate estate; and upon the answer depends the liability.
The rule established by the South Carolina decisions appears to be more. safe, and is more likely to promote the objects cf the grant of a separate estate than the English doctrine, which gives a married woman the power of a feme sole over her separate estate, and directs her note, bond, or other agreement to be satisfied out of this estate. The wife should have the power of charging her estate in proper cases, but the necessity and propriety of the charge may be examined by the court.
There is no doubt that, under the present statute, the wife and husband could be jointly sued at law, without the intervention of the equitable power of the court, for expenses incurred by the wife for the benefit of her separate properly. (Acts of 1848, p. 78.)
In some of the cases the question of whether the capital or rents aud profits of the separate estate are liable to the charges has been much discussed. Where the wife has the entire interest in the estate, the corpus as well as the issue of the estate would no doubt be liable. In this case the application is for payment out of the property or out of the rents or profits. If the latter be sufficient, they should doubtless, and properly, be first subjected to the charge; if not, the capital should be appropriated for that purpose.
Tlie subject is by no means exhausted, and requires more extended investigation than the pressure of other cases now permits. The demurrer admits that the supplies were for the benefit of the estate and family, and upon the whole we are of opinion that the judgment is erroneous ; and it is ordered that the same be reversed and the cause remanded for such further proceedings, in conformity with the principles of this decision, as to law aud justice may appertain.
Judgment reversed.