

# The Attorney General of Texas

February 2, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Warren G. Tabor, Jr.
District Attorney
Hockley County Courthouse
Levelland, Texas 79336

Opinion No. MW-437

Re: Interpretation of article
2340, V.T.C.S.

Dear Mr. Tabor:

Your predecessor in office requested an Attorney General Opinion on questions arising out of the following fact situation: The wife of a county commissioner for Hockley County was employed as deputy clerk in the county clerk's office. The county clerk appoints his deputies, and article 3902, V.T.C.S., prohibits the commissioners court from attempting to influence the clerk's choice. V.T.C.S. art. 1938; Renfro v. Shropshire, 566 S.W.2d 688 (Tex. Civ. App. – Austin 1978, writ ref'd n.r.e.). The salary of a deputy clerk is, however, set by the commissioners court. V.T.C.S. arts. 3902, 3912k, §1.

The deputy clerk held this position for almost seven years prior to her husband's election as county commissioner. The county auditor informed her that he could no longer authorize payment of her salary as deputy clerk of Hockley County, citing Attorney General Opinion H-993 (1977) as authority for his decision. Your questions effectively ask for a re-examination of that opinion.

Attorney General Opinion H-993 (1977) determined that the wife of a county commissioner could not serve as deputy tax collector. This conclusion was based on article 2340, V.T.C.S., which stated as follows:

> Before entering upon the duties of their office, the county judge and each commissioner shall take the official oath, <u>and shall also take a written oath that he will not be directly or indirectly interested in any contract with, or claim against, the county</u> in which he resides, except such warrants as may issue to him as fees of office.... (Emphasis added).

The county paid the wife's salary, and the opinion concluded that the community property laws gave her husband an interest in it. Family Code §5.01.

The predecessor of article 2340, V.T.C.S., was enacted in 1876. Act of July 22, 1876, Acts 1876, 15th Leg., ch. LV, §16, at 53. It read as follows:

> Neither the County Judges nor any of the Commissioners shall enter upon the duties of their offices until they shall have first taken the oath of office prescribed by the Constitution, and shall also take an oath that they will not be directly or indirectly interested in any contract with a claim against the county in which they reside, except such warrants as may issue to them as fees of office....

The original enactment thus did not differ substantially from the version considered in Attorney General Opinion H-993 (1977). See also Acts 1981, 67th Leg., ch. 527, §3, at 2230 (amending article 2340, V.T.C.S.). We note that the 1876 Session Laws refer to "any contract with a claim against the county." (Emphasis added). The substitution of "a" for "or" appears to be a typographical error, corrected in the first codification of the Texas statutes, which was published pursuant to legislative authorization. R.S. 1879, art. 1512; see Acts 1879, 16th Leg., ch. CLI, at 166.

A statute should be construed to give it the effect and scope intended by the legislature. State v. Shoppers World, Inc., 380 S.W.2d 107 (Tex. 1964). It should be construed as understood at the time of its passage. Railroad Commission v. Texas and N.O.R. Company, 42 S.W.2d 1091 (Tex. Civ. App. - Austin 1931, writ ref'd). A statute will be construed in light of social and business customs at the time of its passage. Cousins v. Sovereign Camp, W.O.W., 35 S.W.2d 696 (Tex. 1931).

When the predecessor of article 2340, V.T.C.S., was enacted, married women remained under numerous disabilities of coverture. The husband's domicile became that of the wife. Hare v. Hare, 10 Tex. 355 (1853); Flowers v. State, 3 S.W.2d 1111 (Tex. Crim. App. 1928). He had the sole power to manage and control his wife's separate property, short of disposition. Act of March 13, 1848, General Laws 1848, 2d Leg., ch. 79, §2, at 78; see R.S. 1879, art. 2851. A wife could not legally acknowledge a conveyance of her separate property or the homestead executed by her unless it was explained to her apart from her husband. Acts 1846, 1st Leg., at 156; see R.S. 1879, art. 4310. The purpose of this provision was apparently to protect the wife from unwillingly expressing agreement to the conveyance out of fear of her husband, submissiveness, or lack of education and business experience. Texas Legislative Council, Legal Status of Married Women in Texas, A Report to the 55th Legislature 63-65 (1956); see generally Womack v. Womack, 8 Tex. 397 (1852).

A married woman could not contract except for necessaries or for the benefit of her separate property. Cruger v. McCracken, 30 S.W. 537 (Tex. 1895); see Lee v. Hall Music Company, 35 S.W.2d 685 (Tex. 1931). She could not enter into a business partnership in the absence of a statute authorizing her to do so. R. A. Brown v. Chancellor, 61 Tex. 437 (1884); Bradford v. Johnson, 44 Tex. 381 (1876). A wife could not maintain an action in her own name to collect commissions due her under a brokerage contract made with her husband's consent. Lilly v. Yeary, 152 S.W. 823 (Tex. Civ. App. 1913, no writ).

The Texas Constitution of 1876 excluded women from juries. Tex. Const. art. V, §§13, 17 (1876). It restricted the vote to men, article VI, section 2, Texas Constitution (1876), and provided that state senators and representatives had to be qualified voters. Id. art. III, §§6, 7. Only in 1924 did the supreme court consider whether a woman could hold public office, answering this question of first impression in the affirmative. Dickson v. Strickland, 265 S.W. 1012, 1019-23 (Tex. 1924).

At the time article 2340 was first enacted, and for some time thereafter, a married woman was subject to significant restrictions with respect to property management, business activity, and participation in public life. Despite the protections provided her by community property law, her legal existence was in many ways merged with her husband's. See Cartwright v. Hollis, 5 Tex. 152 (1849), Bobbit, Contractual Power of Married Women in Texas, 1 Tex. L. Rev. 281 (1923). Texas statutes and judicial decisions of the late nineteenth century are infused with the assumption that a married woman's abilities and obligations relegated her to the home. See Cullers v. James, 1 S.W. 314 (Tex. 1886). In view of this assumption regarding a married woman's proper role in society, it is exceedingly unlikely that the legislature of 1876 contemplated that a commissioner's wife might hold county employment or intended that article 2340, V.T.C.S., reach his community interest in her salary claim. Since the commissioner's fees of office are specifically exempted by the statute, it seems consistent to also apply such exemption to his community interest in his wife's salary. Attorney General Opinion H-993 (1977) construed article 2340 overly broadly and in isolation from social conditions prevailing when it was enacted.

In our opinion, a county commissioner whose wife receives a salary for county employment is not thereby placed in violation of his article 2340 oath. To the extent that Attorney General Opinion H-993 (1977) is inconsistent with this opinion, it is hereby overruled.

## S U M M A R Y

A county commissioner whose spouse holds a salary claim against the county does not thereby violate his oath under article 2340, V.T.C.S.,

despite his community property interest in that claim. Attorney General Opinion H-993 (1977) is overruled to the extent it is inconsistent with this opinion.

Very truly yours,

M A R K    W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
James Allison
Jon Bible