NORTON, *appellant*, and W. &. D. WOODS, *respondents.*

Whether a party sued at law by a *co-partnership* can avail himself of the answer of one of the members of the firm to a *bill of discovery* filed after the dissolution of the firm, and when the interest of such member in the subject matter of the suit has ceased, *quere.*

Whether a defendant who omits to file such *bill of discovery,* during the pendency of the suit *at law,* can subsequently file a bill in chancery for relief, *quere.*

APPEAL from chancery. An action of assumpsit was brought in the supreme court in the names of *H. Bulkley A. Bishop and W. Woods* against *Norton,* for money paid. Previous to the commencement of the suit, a *partnership*

——————

Norton v. Woods.

had existed between the plaintiffs, which was dissolved and all the assets of the firm transferred to *W. Woods*, one of the partners, who subsequently assigned his property to *D. Woods*, for the benefit of his creditors. The suit was brought in the name of the late firm, and on the trial of the cause the defendant offered to prove *payment* of the demand by *Bulkley*, one of the late partners. He was objected to as an incompetent witness, and rejected by the circuit judge, on the ground of being a party to the record. The defendant then offered to prove admissions made by *Bulkley* subsequent to the dissolution of the firm, that the *indebtedness* of the defendant was to him *individually*, and *not to the firm:* which evidence was also rejected as inadmissible, and a verdict found for the plaintiffs, on which judgment was entered. The defendant thereupon filed a bill in chancery against *W. Woods*, and against *D. Woods*, his assignee, on the ground that in the suit at law he had been precluded from proving payment of the demand *by Bulkley*, and also from showing the *admissions* of Bulkley that the indebtedness, if any, was to *him individually*, and not to the firm. An answer was put in to the bill thus fi'ed and proofs taken. *Bulkley* was examined as a witness, and gave evidence tending to establish both of the allegations of the complainant. There was, however, evidence on the part of the defendants going to rebut his testimony. The Vice Chancellor of the third circuit, before whom the bill was filed, *dismissed* the bill, and on appeal the Chancellor affirmed the decree. Whereupon the complainant appealed to this court, where the cause was argued by

*S. Stevens*, for the appellant.

*I. Williams*, for the respondents.

Mr. Justice Bronson delivered the only opinion, which was delivered in this court, in which, after reviewing the proofs, he came to the conclusion that the firm of *Bulkley Bishop and Woods* had a legal cause of action against *Norton*, and that the allegation of payment had not been estab-

lished by the testimony, and that therefore the bill filed by Norton could not be maintained. He also held that the bill should not be sustained for the reason that the complainant had not availed himself of his legal defences whilst the suit was depending at law. Upon which last point he delivered the following opinion:

"But as others may arrive at a different conclusion upon the allegation of payment, I will notice another question in the cause, which I think equally fatal to the appellant. The allegations in the bill are, in substance: that the arrangement for taking up the Leavitt note was made with Bulkley *individually*, and not with him as a member of the firm of Bulkley, Bishop and Woods; and that the appellant had subsequently repaid the money to Bulkley in the adjustment of the contract for hogs: in other words, the appellant insists that he was never a debtor to the firm for this money. Now, that was the precise question tried in the suit at law, and, in the absence of all fraud, I am not aware of any principle which will authorize the appellant to reexamine the same matter in a court of equity. Whether he made all the defence in his power, or only half of it, is wholly unimportant. It is enough that he had the opportunity of trying the question, and that the matter has been adjudged against him. That judgment is final. A different rule would lead to endless litigation, which it is the interest of the public, and the policy of the law to prevent. Chancery will sometimes relieve against inequitable verdicts and judgments when obtained by fraud or unavoidable accident, or where there are grounds of equity which could not be made available at law. But as a general rule, no court, whether of legal or equitable jurisdiction, has any authority, except when it proceeds by way of error or appeal, to re-try questions which have been adjudicated by another court of competent jurisdiction.

The defence in this case was as perfect at law as it could be in equity. It consisted in a total denial of the plaintiff's right of action. The appellant insists that he never made any contract with the plaintiffs, and in his bill, it is neither alleged that he had any equitable defence which could not be made available at law, nor that there was any

fraud or contrivance on the part of Woods to deprive him of any legitimate means of defence. It is not, and cannot be denied, that Bulkley was a necessary party to that suit. Although the copartnership had been dissolved and the assets had been assigned to Woods, it was necessary that all the partners should join in an action for the collection of the debts of the firm. This, then, is a bill to open and re-examine a matter which has already been tried at law ; and the only equity alleged is, that the party can now make a better defence than he did before. Such a bill cannot be maintained, without making a new and most dangerous precedent.

In *The Marine Ins. Co.* v. *Hodgson*, 7 *Cranch*, 336, Marshall, Ch. J. said, " that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party *could not have availed himself in a court of law ;* or of which he might have availed himself at law, *but was prevented by fraud or accident, unmixed with any fault or negligence* in himself or his agents, will justify an application to a court of chancery." But, he added, it was no ground for the interference of a court of equity, that it might be of opinion " that the defence ought to have been sustained at law." The bill was dismissed, on the ground, that the defence, if good any where, was good *at law,* and the complainant had not been prevented, *by the act of the defendants,* or by any *pure unmixed accident,* from making it at law. This doctrine was fully sanctioned by Chancellor Kent, in *Duncan* v. *Lyon,* 3 *Johns. Ch. R.* 356. He said, " this point has been so often ruled that it cannot be necessary or expedient to discuss it again ; and it is one by which I mean to continue to be governed." He added : " If the principle was to be materially relaxed, the departure from it, as I apprehend, would soon be perceived and felt to be a great public grievance, by encouraging negligence, protracting litigation, exhausting parties, and drawing within the cognizance of this court the general review of trials at law." In this case, the complainant had suffered judgment at law by *default,* but it was held enough that he had the opportunity of making his defence. In *Shottenkirk* v. *Wheeler,* 3 *Johns. Ch. R.* 275, the same learned jurist held, that although a judgment at law may be impeached for *fraud,*

yet a court of equity would not relieve on the ground that the judgment was irregular. The case of *Foster* v. *Wood*, 6 *Johns. Ch. R.* 87, is much stronger than the one at bar. Judgment had been recovered against special bail for the whole amount of judgment against the principal, although a part of that judgment had been paid, of which the bail was ignorant, and judgment against him was recovered by default. A bill for relief, filed by the bail and other persons having an interest, was dismissed on demurrer. The chancellor said : "The rule is, that chancery will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or *it could not have been received as a defence*, or unless he was prevented from availing himself of the defence *by fraud* or accident, or *the act of the opposite party*, unmixed with negligence or fault on his part." I might refer to many English and American cases in support of the same doctrine, but it is enough that the question has been settled in this state.

I have already remarked that Bulkley was a necessary party in the suit at law. The only pretence, then, for maintaining this bill is, that one of the plaintiffs could have testified to facts material to the defence, but the rules of law did not allow of his being sworn as a witness. The answer to that argument is, that the appellant should have filed a bill of discovery and obtained an answer from Bulkley, which could have been used as evidence for the appellant on the trial at law. With great respect, I must dissent from the intimation of the chancellor on the motion to dissolve the injunction in this cause, 5 *Paige*, 249, that the answer of Bulkley would not have been evidence. There is, I think, a manifest difference between admitting his answer upon *oath*, and receiving his *declaration out of court*, after he had assigned all his interest in the partnership effects. He might be very willing to confess away the rights of a former partner, without being able to swear to the truth of his confessions. This case furnishes a good illustration of the justice of this remark. On the trial at law, the appellant offered to prove that Bulkley, after the dissolution of the partnership, had confessed certain facts, which he failed to prove when af-

terwards called as a witness in this court. In England, the confessions of one partner, though made after a dissolution, are admitted in evidence against the other partners ; and although we have very properly departed from that rule, there is, I think, no solid reason for going further, and holding that the testimony on oath of a partner who has left the firm should be rejected.

The appellant went to trial at law, with a full knowledge of all the facts, and took the chances of a verdict in his favor. He might have had a discovery, and obtained the evidence of Bulkley in aid of his defence, if he had chosen to take that course. He is now too late in appealing to a court of equity. It was so held by Lord Hardwicke in *Williams* v. *Lee*, 3 *Atk.* 223, and in *Duncan* v. *Lyon*, 3 *John. Ch.* 351, the chancellor said, that after a verdict at law, the party comes too late with a bill of discovery. But independent of authority, it will never do to permit a party to appeal to chancery for a new trial, when he has neglected the proper opportunity and the appropriate means of making his defence at law.

On this ground, as well as on the one first considered, I am of opinion that the bill was properly dismissed, and that the decree of the court of chancery should be affirmed.

On the question being put, *Shall this decree be reversed ?* the members of the court divided as follows :

*In the affirmative:* Senators HAWKINS, HUNT, JONES, NICHOLAS, SKINNER, STERLING, VERPLANCK, WORKS—8.

*In the negative :* The PRESIDENT of the Senate, *Mr. Justice* BRONSON, and Senators CLARK, FURMAN, HULL, HUNTINGTON, JOHNSON, H. A. LIVINGSTON, MAYNARD, MOSELEY, PAIGE, PECK, WAGER—13.

Whereupon the decree of the chancellor was *affirmed.**

---

* No question was taken other than upon the reversal or affirmance of the decree, and of course the point discussed by Judge BRONSON as to the right to file a *bill of discovery* in this case, must be considered as an open question, the CHANCELLOR in this same cause having held in 5 *Paige*, 249, that the answer of the copartner to a bill of discovery put in after the dissolution of the firm, would not be evidence.