Hemphill, Ch. J.
The grounds upon which the appellants rely to show that the judgment is erroneous are—
1st. That the contract of the wife, as a joint promissor with her husband, created no legal liability on her part, and was, as to her, absolutely null and void.
2d. That the mortgage was but an accessorial contract, dependent upon the legal liability created by her signing the said note ; and that it was null and void, and could not be enforced against her separate property.
The first proposition, if tested by the rules of the common law, or at least those administered in the common-law courts, is undeniably true. The notes, bonds, or agreements of a married woman are absolutely void at law. Her separate existence is merged in that of her husband; and she can make no contract to charge her estate or render herself liable to an action. (3 Mylne & K. R., 209.) But the case is wholly different in equity; her separate existence is there recognized, both as to her rights and the liabilities with which her property may be affected. She is treated in equity, according to the rules of the English decisions, as possessing in a great degree the powers of a feme sole over the separate property in which she has an absolute interest, and possessing, as incidents to her right of property, the necessary powers of charging, incumbering, or disposing of it at pleasure. Her power to charge is clear; and when her intention to do so is manifest, the liability attaches, and the execution of a note by a feme covert is regarded in equity as prima facie an evidence of her intention to charge her separate estate. The note, then, though void at law, can be enforced in equity against the separate estate of the wife, according to the rule of the English decisions; and although a wife incurs no personal liability by the execution of a note, yet it must be satisfied out of the corpus or profits of her separate estate.
The doctrines of courts of .equity, as to the power of femes covert over their separate estates, are not recognized as rules by which the powers of femes covert over their separate estates, under our statute and their consequent liabilities, are to be determined. The statute has prescribed a special mode for the conveyance or transfer of the property, and unless this mode be pursued, the wife has no power to charge her separate estate except for necessaries for herself and family, and for expenses incurred for the benefit, of her separate property. A note given for these alone, or jointly with her husband, would create a legal liability, which can be enforced against either the common prop *100 erty or-separate property of the wife, at the discretion of the plaintiff. (Acts of 1848, p. 77.)
But the principal question in the case is as to the validity of the mortgage.
Before examining the point whether a mortgage executed as was this, with all the solemnities of the law, is valid, I will take a cursory survey of the power of femes covert to effect by mortgage their separate equitable estates. Their power to do so is quite clear. They can incumber them by mortgage for the payment of their husband’s debts. They could give the estates to their husbands, and a mortgage or other charge upon them is regarded pro tanto, as an appointment of the separate estate. (6 Coms. R., 412; 17 Johns. R., 549; 2 Story Eq., secs. 1390, 1392, 1395, 1399; 2 Roper, 216, 217.) These dispositions of the wife’s equitable estate in favor of the husband will be closely scrutinized: and they must be free from symptoms of fraud, coercion, or undue influence. (2 Story Eq., sec. 1395; 3 Johns. Ch. R., 550; 2 Roper, 216, 224; 2 Ves. jr., 198, 500.)
Waiving the examination of the doctrines of courts of equity in England as to the power of femes covert over their separate estates, I will proceed with the investigation of her powers as regulated by statute. The property in this case-was most probably limited by deed, and a special mode of disposing of or charging the estate may have been directed; but as the deed was not admitted in evidence, its provisions cannot be inquired into, and the question must be determined as if it had arisen upon the separate estate of the wife under the law, and its mode of transfer as established by the acts regulating the subject-matter. At the date of the execution of the mortgage the statute of 1841, prescribing the mode of disposition of the property of the wife, was in force. It declared in effect that when a husband and wife have conveyed any estate or interest in any land, slaves, or other effects, the separate property of the wife, if she appear before any judge of the District Court or chief justice of the County Court and declare that she did freely and willingly seal and deliver the said writing to be shown and explained to her, and wishes not to retract it, and shall acknowledge the said writing so again shown to her to be her act, and such privy examination, acknowledgment, and declaration being certified by the officer, the conveyance shall pass all the right, title, and interest which the husband or wife or either of them have in or to the property thereby conveyed.
The forms prescribed by the statute have been strictly pursued in the execution of this mortgage, and its validity would seem to be beyond dispute, provided the wife has competent authority to convey a less interest or to incumber her estate by complying, in the mode of making the charge, with the formalities prescribed for the conveyance of her entire estate. Tiffs cannot be doubted on principle, and it seems to be equally well settled by the authorities.
By the rules of the common law, and independent of the wife’s right in equity, her personal property vested in the husband, and lie was seized of a freehold interest in her estate of inheritence in land aud entitled to its rents and profits during their joint lives, but if he died before the wife, she took the estate again in her own right. (2 Kent, 130.) She could not contract in relation to '"her personal property, as it had passed to her husband; but in her realty she retained a dormant reversionary interest which, on the death of her husband, revived into the right and title under which she held it before marriage. This interest she could, jointly with her husband, transfer, in England, by way of line; and a deed, with a privy examination and acknowledgment by the wife, having been stipulated for the conveyance by fine in most of the States of the United States, she can convey such interest by deed with the requisites of examination and acknowledgment, which are essential to its validity. (2 Kent Comm., 151.) This has no reference to the disposal of the separate equitable estate of the wife. In the alienation of this she was not restricted to the conveyance by fine, nor was a private examination required to give validity to her deed. (2 Kent, 151; 13 Ves. R., 199.)
Under our former laws the wife could alienate her separate property with *101 the consent of the husband, and, in case of his refusal or absence, by authorization of the judge. The statute has introduced, in addition to the assent of the husband, the requisite of the privy examination of the wife, and in fact the customary mode for the transfer of the freehold and dower interests of the wife under the strict rules of the common law. As a substitute for the clumsy and expensive conveyance by fine, this mode is simple and convenient, but contrasts unfavorably in these respects with the mode prescribed under our former laws or the assurance by which the separate property of the wife in equity may be transferred.
A privy examination before a magistrate was designed and may have some tendency to protect a feme covert from undue influence or coercion by her husband or others, and its operation, if limited to conveyances of lands and slaves, would not be onerous; but when it is considered that it is required by the statute in all conveyances of any of the effects of the wife, and that it is as essential to give validity to transfers of the most insignificant articles among her movables — her poultry, for instance — as to the transfer of lands and slaves, it cannot be denied that such regulations are repugnant to the spirit of laws which recognize the capacity of the wife to hold all her separate property in her separate right, based as they are on the fundamental principle that her separate existence and independent volition are not absorbed, at least entirely, by the coverture in those of the husband. The bonds which the iron principle of the common law had thrown over the rights and powers of the wife had been so far broken by courts of equity as to afford her a reasonable degree of freedom in the disposal of her separate property. In fact, the common law knew nothing of the separate estate of the wife. It owes its foundation in States governed by the common law, and the rules for its control and disposal to the principles of equity jurisprudence. In this State it is now and always has been established by law, and it would seem, if the mode for regulating its transfers must necessarily be sought in other systems, that the rules of equitable jurisprudence, or those which prevailed under our former laws, should have been consulted rather than those modes of conveyance which were known to the common law. The terms and conditions and the principles of the law on which they are based recognize to but a very limited extent the separate existence, civil capacity, or independent will of the wife. We may remark, however, that the restrictions upon the wife’s power of disposal of her separate property to a particular mode have been so far removed as to authorize her separate estate to be charged with .necessaries for herself and family, and expenses incurred for the benefit of her separate property.
But to recur to the inquiry whether the wife can, by complying with the formalities prescribed for the conveyance of her entire interest, execute a valid mortgage of her separate property for her husband’s debts. It is held by the authorities to be beyond question that if a wife join her husband in a mortgage of her lauds and levy a flue thereof, this will bind her and her heirs, notwithstanding her coverture; for as by such a process she may make an absolute sale of the estate, so she may make a conditional one thereof. (Pow. on Mort., 706; Roper on H. and W., 139.) Chancellor Kent, in Demarest v. Wynkoop, (3 Johns. Ch. R., 144.) and in his Second Commentaries, (p. 166.) states the proposition as beyond doubt that a wife may sell or mortgage her separate property for the payment of her husband's debts; that site can deal with her land by fine as if she were a feme sole; and what site can do by lino in England she may do here by any legal form of conveyance, provided she execute under a due examination. (2 Saund. R., 177; 3 Yeates R., 471; 3 Whart. R., 457.) The wife, in the case before the court, on her privy examination acknowledged, after due examination of the contents of the mortgage, that the same was her act and deed; that she had freely and willingly executed the same, and wished not to retract. This was duly certified by the public officer. The law allows her, after these solemnities provided as a safeguard, to pass her whole estate for the payment of her husband’s debts; and her competence under the *102 samo sanctions to pass a less interest or to incumber her estate cannot be questioned.
Note 34. — Cartwright v. Hollis, ante, 162.
Note 35. — Sampson & Keene v. Williamson, 6 T., 102; Shelby v. Burfcis, 18 T., 644; Jordan v. teak, 38 T., 429.
It will not be necessary in this case to examine the doctrine as to the wife’sN right of exoneration out of the estate of her husband, and to have a mortgage of her property given to secure the payment of his debts satisfied out of his assets in case of his death. The general rule is that where a wife joins her husband in a mortgage of her estate for the benefit of the husband as between the husband and wife, the mortgage will be considered the debt of the husband, and after his death the wife or her representatives will be entitled to stand in the place of the mortgagee, and have the mortgage satisfied out of his assets. (3 Kent, Com., 167; Pow. Mort., 725, 726; Id., 875, 876, 877; 1 Ves. Jr., 186 ; 1 Roper on H. and W., 149.)
There is no allegation that the husband has any separate or that there is any community property. If there were, and the debt was in fact contracted for the husband’s benefit, the court would doubtless have competent authority io decree payment out of such property, if sufficient, and if not, the balance to be satisfied out of the separate property of the wife, incumbered with the charge.
As stated in the previous part of the opinion, there is no doubt that courts of equity will examine transactions of this character with vigilance and protect the wife from undue influence or the fraud or compulsion of her husband and others. There is no pretense that in this case there was any fraud or coercion exercised over the wife. Where such defenses are insisted upon to repel the legal effects of the wife’s execution of an instrument under all the formalities of the law, they must be averred by tile wife and sustained by proof, as it is not incumbent on the plaintiffs to establish a negative. Field v. Lowle, 4 Russ. R., 112.)
The counsel in their elaborate arguments have examined to a considerable extent the doctrines prevailing under our former system of jurisprudence as to the disability of the wife to bind herself as security for tile husband, or to mortgage her property for the payment of his debts. There is no doubt that under the 61st law of Toro the wife could not bind herself as security for her husband, although it be alleged that the debt was converted to her benefit; and that when the husband and wife bound themselves jointly in one contract, the wife was not liable in anything, unless it be proved that the debt was converted to her benefit; and then she shall be bound in proportion to what shall have been so applied. (Nov. Rec, lib. 10, law 1, tit. 3.) Her privilege under this law could be renounced; and in that event, to render her liable, it was not necessary that the debt inured to her benefit. (Martin, N. S. 40; Bein v. Heath. 6 How. U. S. R., 228.) Her disability to become security is also subject to certain exceptions. (Diccionario de Legislación, verbo Muger.)
It appears' that under our former laws she could nave validly incumbered her separate estate by renouncing the immunities guaranteed to her by law; and an awkward attempt at such waiver appears to have been made in the execution of the instrument. The doctrines of that system of laws are, however, not applicable to the case, and their investigation need not be pursued.
We are of opinion that there is no error in the judgment of the court, and it is ordered that the same be affirmed.
Judgment affirmed.