## JONES v. CROSTHWAITE *et ux.*

| 17 | 393 |
|----|-----|
| 106 | 542 |
| 17 | 393 |
| 108 | 542 |
| 17 | 393 |
| 128 | 302 |

1. **Surety: ABSOLUTE LIABILITY.** The general rule, that a discharge of a principal releases the surety, does not apply when a person *sui juris* guarantees the obligation of, or becomes surety for, a married woman, minor, or other person incapable of contracting.

2. **Husband and wife : STATUTE.** It was the main purpose of the Code of 1851 and the Revision of 1860 to protect the rights of married women in their property, but not to invest them with power to make contracts of all kinds, sign notes, become sureties for their husbands and others, and engage in general business by executory contracts which can be enforced in actions at law.

3. —— **CONTRACT OF PURCHASE.** An executory contract by a married woman to purchase property is not "a contract in relation to her separate property" within the meaning of § 2506 of the Revision of 1860.

*Appeal from Warren District Court.*

TUESDAY, DECEMBER 6.

CONTRACTS OF MARRIED WOMEN AT LAW — CONSTRUCTION OF STATUTE. — Action *at law* by the payee against the makers of a promissory note. The defendant, Sarah E., answers that, at the time of the execution of said note, she was, and still is, the wife of her co-defendant, E. G. Crosthwaite, and living with him as such; that the sole consideration of said note was a contract whereby the plaintiff agreed to sell to her an undivided half of a certain steam mill, as witnessed by a certain title bond from him to her, annexed to her answer, in consideration of $5,000; for part of which the note in suit was executed. She further alleges that the note was not executed for the expenses of the family, did not relate to her separate property, nor purport to bind herself only. The answer of the husband is the same in effect; alleging, also, that he has since offered to rescind the contract, by tendering back the title bond to, and demanding the notes of, the plaintiff. By an amended petition, in the nature of a replication, the plaintiff alleged that the said note was made in relation to the separate property of the wife.

It appeared in evidence that the defendants intermarried shortly before the execution of the note in suit; and that the wife had separate property at the time of the marriage. Some weeks *before* the marriage, the plaintiff made with the defendant, Mr. E. G. Crosthwaite, a contract by which he agreed to sell him an undivided half of the mill; and under this contract the said E. G. C. took possession prior to the marriage, and kept possession, and run the mill for over a year, and till September, 1863. *After* the marriage (the husband being in debt), it was agreed that papers should be made out in the wife's name. The

plaintiff testified that this was done at the instance of the husband, and he testified that it was done at the special instance of the plaintiff. The plaintiff was not present when the notes were signed. The wife, according to E. G. C.'s testimony objected to signing them, but finally consented, her husband stating that plaintiff had said that as the bond for the deed was in her name, it was necessary for her to sign the notes to make the bond good; that before marriage she said that she would allow the property to be taken in her name if it did not make her individual property liable, but did not then agree to sign the notes. After the marriage, the bond for a deed was made out in the name of the wife alone, and she and her husband jointly signed the note in suit, with others. All that was paid on account of the purchase, was paid by the husband out of his own means. Jury trial, and verdict for defendants. Plaintiff appeals.

*Casady & Polk* and *H. W. Maxwell* for the appellant.

*C. C. Nourse* for the appellees.

DILLON, J. — I. The husband, according to his own testimony, purchased the property prior to his marriage, and

1. SURETY: absolute liability.

was let into actual possession and enjoyment of it, and by his consent, if not by his request, the bond was taken in the name of his wife. Having, under these circumstances, executed the note in suit, he was liable thereon. The finding by the jury, of a verdict in *his* favor, was directly contrary to the evidence, and to the instructions of the court, and for this reason the court should so far have sustained the appellant's motion for a new trial. Such would clearly be the law, if the husband is to be regarded as the real purchaser of the property, and not his wife. But suppose she is to be considered as the real purchaser, and he only as her surety. Still the verdict in *his*

favor, certainly, under the circumstances of this case, is wrong. The general rule is clear and undoubted, that the obligation of a surety is accessorial only; and that whatever discharges the principal discharges the surety. This is well illustrated by the case of *Ames* v. *McClay*, 14 Iowa, 281. But this rule has its exceptions. One of these exceptions is, where a person *sui juris* guarantees the obligation of, or becomes surety for, a married woman, a minor, or other person incapable of contracting. And the cases hold, that the surety of a married woman is bound, notwithstanding a successful plea of coverture on her part, and this doctrine is applied to promissory notes as well as to other obligations. *Smyley* v. *Head*, 2 Rich., 590; *Kimball* v. *Newell*, 7 Hill (N. Y.), 116, and cases cited; 1 Parsons on Notes and Bills, 244; Chitty on Contr., 499. For these reasons, the judgment in favor of E. G. Crosthwaite is reversed, and the cause remanded.

II. Whether the wife is liable, in any event or in any tribunal, upon the state of facts above set forth, is not the question before us. The question now presented is: Is she liable in this action *at law upon the note?* Her answer, unlike the answer in *Rodemyer* v. *Rodman*, 5 Iowa, 426, does not simply set up coverture and stop there; but she alleges further the consideration out of which the note arose. Under the averments of her *answer*, the question would be, whether, at law, a married woman is liable upon her contract to purchase real estate in her own name. Under the *testimony* which was admitted under the amended petition, the question as to her would be, whether, on her notes, executed to complete or carry out a purchase made by and for the husband, she is liable, the title bond being taken in her name. It is unquestionable and unquestioned that at common law, aside from statutory provisions, a married woman is, during coverture, incapable of making a valid contract to bind her person or

estate. Her note is absolutely void at law, and no judgment can be rendered thereon against her. (Edwards on Notes, 68 ; *Coon* v. *Brook*, 21 Barb., 546 ; *Cartwright* v. *Hollis*, 5 Texas, 152 ; *Hollis* v. *Francois*, Id., 192 ; *Deckman* v. *Abrams*, 21 Barb., 551 ; Chitty on Bills, 24 ; Story on Notes, sec. 85 ; *Vance* v. *Wells & Co.*, 6 Ala., 737 ; *Yale* v. *Dederer et ux.*, 18 N. Y., 265 ; *Colum* v. *Currier*, 22 Barb., 371 ; *Burch et ux.* v. *Breckenridge*, 16 B. Mon., 482.) Not only so, but it is even held that the confession of judgment by a married woman, without action, is void, even though for money applied for the benefit of her separate estate. So decided in *Watkins* v. *Abrahams*, 24 N. Y., 72 (A. D. 1861). This is upon the ground that she is not liable personally on her contracts, and that no personal judgment can be rendered against her. See, however, Revision, §§ 2772, 2933, referred to *infra.* In *Painter* v. *Weatherford*, 1 G. Greene, 97, decided at an early day (1848), (before the Code), an action was brought upon a promissory note executed, like the note now in suit, by a married woman, in part payment for a tract of land for which she had received a title-bond. Suit being brought at law upon one of the notes, it was adjudged that coverture was a good defense, though the defendant had been living permanently separated from her husband, but within *the same State*, for about two years, without any prospect of reunion. (See also *Smith* v. *Silence*, 4 Iowa, 326 ; *Rodemyer* v. *Rodman*, 5 Iowa, 426.) It is clear that Mrs. Crosthwaite is not liable in this action, unless there are provisions of the statute so far removing the disabilities of coverture as to make her liable to a personal action at law, and a personal judgment upon her executory contract, executed as surety for her husband, or for the purchase of real estate for her own benefit.

In consequence of the changes which the statute has made, there is perhaps no part of the law more involved in uncertainty and doubt, none about which the profes-

sional mind is more unsettled, than the law in relation to husband and wife, and particularly in relation to the rights of married women. These doubts arise chiefly with respect to the *nature* and *extent* of the change which has been wrought by the Legislature. In dealing with this most interesting and important title, the lawmakers have not, as it seems to us, always used language with that definiteness and precision which are desirable, and which alone can give clearness and certainty to the legislative intent. The delicate and difficult task, therefore, devolves upon us, in this case, to trace, to some extent, the changes which have been made by legislative enactment, with a view of ascertaining how far, by our law as it now exists, married women are regarded as being discovert. We will now refer, with all possible brevity, to the various sections of the statute bearing upon this subject, in their order. By § 2200 of the Revision: "Married women may receive grants or gifts of property *from* their husbands without the intervention of trustees." This they could not do at common law; nor at common law could they make grants or gifts of property *to* their husbands. This section does not profess to apply to married *men*, and under a very similar statute the common law rule as to grants by the wife *to* the husband was considered in force, and it was accordingly held, that a deed executed by the wife directly to her husband, though made in contemplation of death, in good faith and voluntarily, but without a *valuable* consideration, was void. *White* v. *Wager*, 25 N. Y., 326 (1862); *S. C.*, 32 Barb., 250. But see *Blake* v. *Blake*, 7 Iowa, 46. Certain it is that this section contains nothing favoring the notion of personal liability on the part of married women with reference to executory contracts. By another section (Rev., § 2214), it is provided that "a married woman may convey her interest in real estate in the same manner as other persons." Whether this refers to

her interest in her husband's property, as dower, or to her own property, or both, is not very clear (see Act, 1858, Rev., § 2255), nor in this case is it important to inquire, because it has no reference to her power to make contracts. Without any statute enabling her to do so, a wife may, at common law, unless prohibited by the instrument under which she holds, sell or mortgage her separate property for her own or her husband's debts; and may even execute, for these purposes, deeds of trust or mortgages with power of sale. *Young* v. *Graff*, 28 Ill., 20; 2 Am. Law Reg., N. S. (Sept. 1863), p. 651; 2 Kent Com., 167, 168; *Demarest et ux.* v. *Wynkoop*, 3 Johns. Ch., 129; *Yale* v. *Dederer et ux.*, 18 N. Y., 265; reversing *S. C.*, 21 Barb., 286; and see same case again, 22 N. Y., 450; *Smith* v. *Townsend*, 25 N. Y. (1862), 479; *Leavitt* v. *Pell*, Id., 474; 2 Story Eq., § 1391; *Hollis* v. *Francois*, 5 Texas, 195; Id., 152. But an agreement to sell or mortgage for this or any purpose was void in law, and not in general enforceable in equity. (Same authorities.)

We now come to chapter 101 of the Revision. The object of the first sections of this chapter is to abrogate some, and modify others, of the unreasonable rules of the common law as to rights of the wife (or, rather, her want of rights) *in her property*. At common law the effect of marriage was to vest in the husband at once, and absolutely, all of the wife's personalty in possession, and her choses in action on condition that he reduced them to possession during coverture. He had also the right to the rents and profits of her real estate. Bright on Husb. and Wife, 34, 36; Co. Litt., 351 *a*. These matters are now regulated by §§ 2499, 2502, 2504, of the Revision; but none of these sections contain any provisions removing personal restraints of coverture so as to enable married women to make valid contracts. And such has been the previous holding in this court. *Mullin* v. *Mullin*, 10 Iowa, 412; *Duncan* v. *Roselle*, 16 Id., ——;

where the common law rule (which ought, perhaps, to be guardedly modified by the legislature), that money or property acquired by the labor and industry of the wife during coverture vests in the husband, and is liable for his debts, was still held to be the law in this State. And see *Suiter* v. *Turner*, 10 Iowa, 517, and *Laing* v. *Cunningham*, at the present term.

Sections 2505, 2506, *et seq.*, of the Revision, are those which have been supposed to remove the personal disabilities of coverture. But they do not. Taking §§ 2505 and 2506 together, they are, that the husband is not liable on contracts made by the wife in relation to her separate property, or on those which purport to bind herself only ; nor is the property of the wife, or the rents or income, liable for the debts of the husband. Two species of contracts only are here alluded to : 1st. "Contracts by a wife in relation to her separate property." This is clear; they bind her, and do not bind the husband. 2d. Contracts purporting to bind herself only are declared not to bind her husband. This is not very clear; but it would be a most unwarrantable construction to say that this vague and ambiguous language was intended to emancipate married women from all the disabilities of coverture, make them *sui juris*, and enable them to enter into valid contracts of all kinds with their husbands and others, with or without the husband's consent. That this was not the intention, plainly appears from § 2508, which allows " married women abandoned by their husbands to obtain authority from the District Court to *act*, and *to transact business as though unmarried.*" Why this special provision in favor of one class of married women, if all married women, without any such authority, have the right to act and contract as though unmarried ?

The above provisions were contained in the Code of 1851. In chapter 117 of the Revision of 1860, relating to "*Parties to Actions,*" it is, in addition, provided (§ 2771) " That when

the action concerns her separate property, or is *founded on* *her own contract*, a married woman may sue and be sued alone," and "when sued alone" (§ 2772), "judgment shall be enforced against her separate property." To the same effect, see § 2933, which authorizes a personal judgment against her on "contracts which she has the legal right to make," "with respect to her separate property." These sections relate to parties to actions and to pleadings, both at law and in equity. They do not declare *what* contracts of a married woman will support an action; what are valid. or what not. They have reference to another subject matter, viz., to pleadings, and to proper parties to actions, If a *feme covert* enters into a valid contract, for example, one in relation to her separate property, on this contract she may sue or be sued alone; and if a recovery is had against her, the common law rule (Story Eq. Jur., § 1397, and note; *Watkins* v. *Abrahams*, 24 N. Y., 72; *Coon* v. *Brook*, 21 Barb., 546, and authorities, *supra*) is so far modified by sections 2772 and 2933 as that the judgment may be rendered against her personally, and enforced against her separate property. These are all of the provisions of the statute materially affecting the question. From this examination of them it is plain that the main design of the legislature was to protect the rights of a married woman in her property, and not to invest her generally with powers of a *feme sole.* We see nothing evincing a design to emancipate married women from the disabilities of coverture, any further than we have specified. If it had been intended that they should have the general power to make contracts of all kinds, sign notes, become sureties for their husbands and others, and engage in business generally, this intention, inaugurating a change so important and so radical, would have been expressed in apt and appropriate language. These views are sustained by the following authorities: *Benton* v. *Beer*, 35 Barb., 78; *Howe* v. *Wildes*, 34 Maine, 566; *Winans* v. *Peebles*, 31 Id.,

37; *Fuller* v. *Bartlett*, 41 Id., 241; *White* v. *Wager*, 25 N. Y., 328; *Bates* v. *Wright*, 42 Maine, 105; *Watkins* v. *Abrahams*, 24 N. Y., 72; Willard's Eq., 650, 654; *Morgan* v. *Andriot*, 18 How. Pr. Rep., 371; *Andriot* v. *Lawrence*, 33 Barb., 142; *Yale* v. *Dederer*, 18 N. Y., 265; *S. C.*, 22 Id., 450; and they accord with the majority opinion in *Rodemyer* v. *Rodman*, 5 Iowa, 426, the doctrine of which case, as well as the reasoning on which it proceeds, is clearly correct, and is reaffirmed.

Only one question remains, and that is, whether, in the view that Mrs. C. was the purchaser of the real estate, the notes which she executed were "in relation to her separate property." Her separate property, within the meaning of the law, is that which she has acquired by settlement upon her, by inheritance, gift, grant or purchase, and which is *hers*. It is that which she owns in her own right, independent of her husband; and this character is imparted to, or impressed upon it by the settlement, devise, deed or other instrument by which she acquired it. See, on this point, *Johnson* v. *Jones*, 12 Ben. Mon., 329; *Petty* v. *Malier*, 14 Id., 247; Willard's Eq., 652, and cases there cited. An executory contract to purchase property is not a "contract in relation to her separate property," within the meaning of § 2506 of the Revision. If such a contract should be considered as valid at law, it would be difficult to say what species or character of contracts would be invalid. A wife owns her real property under our statute as fully as the husband owns his. As an incident of such ownership, she has the absolute *jus disponendi*. She may, as we have seen, mortgage or sell it for her own or her husband's debts; and it is reasonable that the statute should give, as it does give her, the power to make contracts in relation to the same. *Musser & Co.* v. *Hobart*, 14 Iowa, 249; *Greenough* v. *Wigginton*, 2 G. Greene, 435; similar cases,

*3. —— Contract of purchase.*

decided in the same way; *Colvin* v. *Currier*, 22 Barb., 371; *Deckerman* v. *Abrams*, 24 Id., 551.

Our statute seems founded on a wise policy for the more effectual protection of the rights of married women. The two cardinal ideas upon which it proceeds are, first, the wife's restoration to the exclusive dominion and enjoyment of her own real property, exempt from her husband's control and from liability for his debts; and, second, her incapacity to make general personal contracts, except for "the expenses of the family," &c. (§§ 2506 and 2507), through the persuasion of her husband or her own improvidence, whereby the property thus secured to her may be imperiled or lost. In this very inability thus to contract, consists her best and surest protection. Her disability is thus wisely converted into a security more certain and effective, perhaps, than any which, if the disability were removed, could be thrown around her by the most carefully constructed and elaborate legislative defenses. The foregoing views relate to the rights of the parties at law. Equity, it is well known, enforces in a peculiar manner, in certain cases, against the property of married women, debts which have been beneficial to them or to their separate estate, or which have been contracted on the faith of it, and this though the obligations are void at law. *Patton and Wife* v. *Kinsman, ante.* The *principles* upon which the jurisdiction is based, and upon which relief is administered, have been, and still remain, the subject of much dispute. As particularly bearing upon it, we refer to the recent and warmly contested and important case of *Yale* v. *Dederer*, 18 N. Y., 265, reversing same case, 21 Barb., 286; and see same case again, 22 N. Y., 450; *Gardner* v. *Gardner*, 22 Wend., 525; *S. C.,* 7 Paige, 112; *Curtis* v. *Engel*, 2 Sandf. Ch., 287; Story Eq., § 1397, *et seq.; Holme* v. *Tenant*, 1 Lead. Cases in Eq., 389, and English and American notes; *Patton* v. *Kinsman, supra; Hollis* v. *Francois*, 5 Texas, 195; Id., 152; *Aylett* v. *Ashton*,

1 M. & Craig, 105; *Frances* v. *Wigzell*, 1 Madd., 258; and *Dowling* v. *Macquire*, 1 Rep., t., Plunkett, 1, cited 2 Bright H. & W., p. 254, § 15, relating to purchase by wife having separate property, of an estate for herself.

The directions of the learned judge below, which need not be set out, were to the effect that the wife was not liable on this contract in the action then before the court; and in this there was no error. Whatever rights, if any, the plaintiff has with respect to the wife, must be asserted in a court of equity. The judgment of the District Court as to the husband is reversed; as to the wife, affirmed. The costs on appeal to be paid by the husband.