## WOLF v. VAN METRE *et al.*

### I. Per CURIAM.

1. **Voluntary conveyance: PURCHASER WITH NOTICE.** A voluntary conveyance, made in good faith, cannot be defeated by a subsequent purchaser with notice.

2. **Husband and wife: PERSONAL LIABILITY.** While a wife's lands, mortgaged to secure the payment of a note executed by her husband, and upon which she is surety, may be subjected to the payment of the mortgage debt, she is not *personally* liable on such note, and her general property cannot be reached to pay the same.

3. —— **SUFFERING JUDGMENT.** But if she suffers a personal judgment to be rendered against her by default on such note, she cannot afterward avoid the force thereof by pleading her coverture.

### II. Per DILLON, J., LOWE, Ch. J., concurring.

4. —— **VOLUNTARY CONVEYANCE.** But a judgment thus suffered to go against her, will not take relation back to the execution of the note, so as to defeat the rights of voluntary grantees to whom she had in good faith conveyed the land before the judgment was rendered, though not until after the apparent indebtedness arose.

### III. Per CURIAM.

5. —— **APPLICATION OF RULE: PURCHASER WITH NOTICE.** A married woman having signed a note of her husband as surety, joined in the execution of a mortgage on land belonging to her, to secure the same. Subsequently, she, in good faith, voluntarily conveyed other lands belonging to her, to her children. After this, the creditor, with notice of the voluntary conveyance, surrendered the mortgage and note that he held, and took in their stead new notes, also signed by

Wolf v. Van Metre.

the wife as surety, with a mortgage securing them upon the lands embraced in the voluntary conveyance. Default having been made in the payment of these last notes, the creditor commenced suit thereon, and recovered a personal judgment by default against both husband and wife, and thereupon instituted a proceeding in equity to subject to its payment the land embraced in the voluntary conveyance: *Held*, that the rights of the voluntary grantees could not be affected by the judgment, nor the lands conveyed to them, subjected to the payment thereof. WRIGHT and COLE, JJ., basing their concurrence largely upon the fact that, for the first note, the creditor held independent security, which he released by taking the new notes and mortgage, with *notice* of the prior voluntary conveyance.

6. —— CHARACTER OF INTEREST CONVEYED. It seems that in England a voluntary conveyance will not be declared void, either as to subsequent or existing creditors, unless it transfers property liable to be taken in execution. *Aliter* in this country, where it is held that if the property could have been reached by the creditor through a court of equity, though it could not have been seized on execution at law, the conveyance, if to the prejudice of creditors, will be declared void.

*Appeal from Benton District Court.*

FRIDAY, DECEMBER 13.

VOLUNTARY CONVEYANCE BY WIFE: WHEN VALID, ETC. This cause was before this court at the June Term, 1865. See 19 Iowa, 134. Afterward the cause was, by the District Court, referred to a referee. His report will be found in a note.* The plaintiff, as the assignee of a note

---

* REPORT OF REFEREE.

I, John Shane appointed sole referee in the above entitled cause, having heard the proofs and allegations and arguments of counsel, do certify and report that I find for facts in said cause as follows to wit:

1. That on the 9th day of February, A. D. 1857, one John E. Van Metre the then husband of Josina Van Metre, defendant, was indebted to Greene & Weare, a firm composed of George Greene and John Weare, in the sum of $955.66.

2. That on the said 9th day of February, A. D. 1857, the defendant, Josina Van Metre, still being the wife of John E. Van Metre, executed a note to said Greene & Weare as surety for her said husband, who signed the same as principal, for the said sum of $955.66, being the amount of the indebtedness as stated above.

3. That, on the 1st day of December, 1857, said note was transferred by the said Greene & Weare to the said John Weare.

given to Weare (of Greene & Weare), on which judgment has been recovered against Josina Van Metre and husband, seeks by this suit, which is in equity, to reach certain lands conveyed by the said Josina to her son and daughters-in-law. The said Josina and her said grantees are made defendants. The testimony is all before the court, and it warrants the findings of fact made by the referee.

The District Court set aside the report of the referee, and upon the evidence, dismissed the petition. The District Court, however, was of opinion "upon a careful reading of the testimony, that the facts found by the referee were correct, with one exception," viz.:

"That the conveyance was upon the consideration of,

---

4. That, on the 29th day of October, 1859, the said note of $955.66 was surrendered and taken up by the said John E. Van Metre and Josina Van Metre, who, in lieu thereof, executed and delivered to John Weare their three several promissory notes, one of which was for $371.26.

5. That, on the 4th day of February, 1862, said note for $371.26 was assigned and transferred to John S. Wolf, plaintiff herein.

6. That, on the 26th day of February, 1862, the said John S. Wolf, plaintiff, recovered judgment by default in the District Court of Benton county, Iowa, against Josina Van Metre, a defendant herein, upon said promissory note, for the sum of $457.87, damages and costs of suit taxed at $6.53. And it is admitted by the parties, that, after the rendition of said judgment, execution was issued thereon, and returned "nulla bona."

7. That, at the date of the execution of said $955.66 note, to wit, on the 9th day of February, A. D. 1857, the said Josina Van Metre was the owner of and held the legal title to the following described lands, situated in Benton county, to wit: the E. ½ of S. E. ¼ of sec. 29, and the N. E. ¼ of N. E. ¼ and S. W. ¼ of S. W. ¼, and S. E. ¼ of N. W. ¼ of sec. 32, all in town 83, range No. 11 west, 5 P. M., being the same land in plaintiff's petition described.

8. That said Josina Van Metre remained the owner and holder of the legal title to said lands until the 27th day af November, A. D. 1858, when she conveyed said lands for the consideration of natural love and affection as follows, to wit: to her son, John Van Metre, the S. E. ¼ of S. E. ¼ of sec. 29, and N. E. ¼ of N. E. ¼ of sec. 32, town 83, range 11 west, 5 P. M.; to her daughter-in-law, Rhoda D. Van Metre, the S. E. ¼ of N. W. ¼ of sec. 32, town and range aforesaid; and to her daughter-in-law, Ruth H. Van Metre, the S. W. ¼ of the N. W. ¼ of sec. 32, township and range aforesaid.

9. That on the 29th day of October, 1859, and after the execution and delivery of the conveyancess above found, the said Josina Van Metre, executed to said John Weare, a mortgage on the above described lands, to secure the payment of the said $371.26 promissory note.

natural love and affection only; whereas the conveyances to Rhoda D. and Ruth H. Van Metre were upon valuable considerations."

The District Court was also of opinion, upon the evidence, that Greene and Weare, when they received the first note in 1857, "had the same amply secured by a mortgage upon two hundred and eighty *acres of other land*," which mortgage was satisfied when the three new notes and mortgage were taken in 1859.

The District Court, admitting the conflict in the testimony, was also of opinion " that Weare knew of the conveyances now sought to be set aside," when he received the new notes and mortgage in 1859.

. The District Court being of opinion that the note

---

10. That from the 9th day of February, 1857, and for a long time prior thereto, up to the 26th of February, 1862, the said Josina Van Metre was the wife of John E. Van Metre, and that said notes nor either of them were given for any separate individual indebtedness of the said wife, nor on account of her separate property, but as surety for her said husband

11. That the grantees of Josina Van Metre to wit: John Van Metre, Rhoda D. and Ruth H. Van Metre at the time of accepting the conveyances to them as aforesaid, had no knowledge of the existence of any indebtedness on the part of their grantor, to Greene & Weare or to the said John Weare.

My conclusions of law from the foregoing facts are:

1. That the judgment against Josina Van Metre, " determines the binding force of the contract between the said Josina and John E. her husband on one part, and Greene & Weare on the other part, entered into the 9th day of February, 1857, by the execution of said $955.66 note, and that therefore said Josina was indebted to said Greene & Weare on and after the 9th day of February, 1857.

2. That in the absence of fraud or undue influence, the said Josina is by said judgment concluded from denying the force or effect of said contract or the validity of the consideration out of which said contract arose.

3. That inasmuch as the answers of the co-defendants of the said Josina, contain nothing impeaching the said judgment nor the contract upon which it is based, they cannot avail themselves of the facts set up and pleaded in the said Josina's answer, and are concluded by said judgment.

4. That the conveyances from the said Josina to her co-defendants, respectively, having been made subsequently to the time when said debt was contracted, and without any valuable consideration, were and are constructively fraudulent, as to plaintiff and those under whom he holds and should be set aside, and said property or so much thereof as necessary should be sold to satisfy said judgment.

5. I therefore conclude that, a decree should be entered in accordance with the prayer of plaintiff's petition, and that he should have judgment against defendant for costs of suit.

JOHN SHANE, *Sole Referee.*

signed in 1857, by Josina, as surety for her husband, did not bind her personally, but only bound the estate she then mortgaged to secure it, and " that when the children received their conveyances, there was no indebtedness of Josina that could possibly reach the land conveyed to them, set aside the report of the referee and dismissed the bill of the plaintiff." From this decree the plaintiff appeals.

*J. C. Traer* for the plaintiff.

The defendant Josina Van Metre cannot plead her coverture in defense to this action. She has had her day in court, and suffered judgment to go against her in an action at law. And now she cannot be permitted to set up in answer to plaintiff's bill, the same defense that she should have interposed to the action at law involving the same subject-matter. See 19 Iowa, 134; 13 Id. 538; 1 Id. 257; 4 Id. 246; 12 Wend. 399; 4 Selden, 173; 1 Johns. Ch. 502; 7 Cranch, 236; 3 Johns. Ch. 49; 22 Wend. 520; 7 B. Monroe, 293; N. Y. 71, 76; Id. 137, and cases there cited.

*I. M. Preston & Son* and *C. H. Conklin* for the defendant.

Both the notes given by Josina, before judgment, were absolutely void. 17 Iowa, 393, 397; 1 Par. on Con. 286; 18 N. Y. 265; 22 Id. 450.

She cannot ratify such contracts after the death of her husband. 22 N. Y. 361. Nor can she even confess a judgment thereon. 24 N. Y. 72; 17 Iowa, 397.

The doctrine of *relation* has no application. There is no subject to which the judgment can relate. But even if it were otherwise, the circumstances here do not justify an interference with the vested rights of these defendants.

DILLON, J. — The testimony shows that the land conveyed by Josina, to the children, was given to her prior to any indebtedness of her husband to Greene and Weare or other persons, by two of her sons, viz., Jeptha and Henry Van Metre. These sons are middle aged men, and none of the money with which they acquired the land they caused to be conveyed to their mother, was derived from either her or their father. It was undeniably their own; and their gift to their mother was unquestionably made from the best of motives. Two of the conveyances from the mother, now sought to be set aside, were to the wives of the said Jeptha and Henry. The other was made by the mother to a minor son.

The material facts may be briefly recapitulated thus:

1. In 1857, the husband of the said Josina was indebted *on his own account* to Greene & Weare, in the sum of $955.66, and the said Josina joined with her husband, and as his surety, in a note to Greene & Weare, for that amount, which note was secured by a mortgage upon lands *other than those* now in controversy.

2. In 1858, Josina made to her son and daughters-in-law voluntary conveyances of the lands now in question for the consideration of natural love and affection. We doubt whether it is established that there was a *valuable* consideration for the conveyances to the daughters-in-law, although the learned judge below was of that opinion.

3. These voluntary grantees received their deeds in good faith and without any knowledge of the outstanding note in favor of Greene & Weare.

4. In 1859, Josina joined with her husband as his surety, in making three notes in the place of the old one, which was surrendered, and, to secure such new notes, gave a mortgage on the lands deeded the year before to her son and daughters-in-law.

" The plaintiff's assignor (Weare) knowing," as the District Court found, " at the time he received such new notes and mortgage, that these conveyances had been made." We are satisfied that Weare had constructive if not actual notice of these conveyances.

5. The plaintiff took the note of Weare after it was due and subject to all equities.

Assuming these to be the facts, and the evidence certainly warrants us in thus regarding them, we are of opinion that the District Court correctly decided in favor of the validity of the conveyances to the children.

The subject of voluntary conveyances in some of its aspects was quite fully considered by this court in the case of *Gardner* v. *Cole* (21 Iowa, 205), to which we now refer.

Where the voluntary conveyance is made in good faith, and the subsequent purchaser or incumbrancer has notice 1. VOLUNTARY of it, he cannot defeat it. In this case the CONVEYANCE: purchaser voluntary conveyances were made in good with notice. faith, and the rights of the grantees thereunder will be protected unless those conveyances were, as to creditors of the grantor, constructively or legally fraudulent. Did those conveyances operate to defeat any legal or equitable rights on the part of Greene & Weare, the only creditors claimed or shown to exist?

What were the relations and rights of the parties in 1858, when the mother conveyed to the children? Greene 2. HUSBAND & Weare held the note of the husband signed AND WIFE: personal lia- by the said Josina as his surety. On this bility. note, it is settled by the decisions of this court, she was not personally liable. *Jones* v. *Crosthwaite,* 17 Iowa, 393; *Patton* v. *Kinsman,* Id. 429; *Johnson Co.* v. *Rugg,* 18 Id. 138; *Wolf* v. *Van Metre,* 19 Id. 134. Nor could her general property be reached to pay the same. This note was secured on other lands, and these, even if

they belonged to the wife and she was surety only, would be liable to be subjected to the payment of the note. But the holders of the note had no legal or equitable claim on the land of the wife not mortgaged. They had no obligation which they could enforce as of right against the land now in controversy.

In conveying it, the mother did not impair or affect any legal or equitable rights of Greene & Weare. The rights of the children were acquired at the time they received their conveyances from Josina. What she conveyed to them was property on which Greene & Weare had no legal or equitable claim, property which they could in no court ask to be subjected to the payment of their debt. Therefore the voluntary conveyances did not operate to defraud Greene and Weare of any rights.

The next year the mother renewed the note of the husband, and in 1862 she suffered judgment by default to 3. —— suffering pass thereon against her. Now, as between judgment. the plaintiff who recovered this judgment, and Josina who suffered a recovery which she might have avoided, this judgment is conclusive, and she cannot, to avoid the effect of that judgment, now plead her coverture. This was determined in this case on the other appeal (19 Iowa, 134).

But to hold that the suffering of such a recovery against her, will defeat the rights of the children under their 4. —— volun- conveyances previously obtained, would, as it tary convey- seems to me, be most unjust. The children took their deeds in good faith without knowledge of Green & Weare's debt.

Weare took the new notes in 1859, with knowledge, either actual or constructive, of the conveyances to the children, and surrendered the security which he held on other lands. Now what equity has he or his assignee to turn around and claim priority over the children? To

subject their property to pay his judgment? None whatever.

In my opinion, the *bona fide* voluntary grantees of the mother *may*, notwithstanding the judgment of 1862, to which they were not parties, *insist upon the truth*, which is, that in 1858, at the time they received their deeds, their grantor, the said Josina, did not, in law or equity, owe the said Greene and Weare, and hence they were not defrauded by her conveyances.

In unison with these views, and harmonizing with this result, are the authorities.

It is the legal or equitable rights of creditors which the statute of 13th Elizabeth intends to protect. Its design is to prevent a debtor from voluntarily withdrawing his property from the satisfaction of the claims of his creditors.

In England, the rule would seem to be, "that to make a voluntary conveyance void as to creditors, either exist-

6. —— charac-ter of interest conveyed.
ing or subsequent, it is indispensable that it should transfer property liable to be taken in execution." Will. Eq. 237; Story Eq. §§ 366–368; Atherley, 220; Rob. on Fraudnlent Conv. 421. But, in this country, it has been frequently, and it would appear more reasonably held, that if the property transferred by the debtor be such as could be reached by the creditor, through the act of a court of equity, though it could not be seized on execution at law, a voluntary conveyance of such property to the prejudice of creditors would be void. Will. Eq. 238, and authorities cited. But where the property voluntarily transferred was that upon which the creditors had no claim, either at law or in equity, that is, was property which the creditor would have no *right* to call upon either court to apply toward his debt, it cannot be predicated of the transfer of such property, that it was fraudulent, or that it breaks in upon the object or policy of the 13th Elizabeth.

And we further hold, that the suffering of judgment by the grantor, in 1862, upon a note given in 1859, does not, under the circumstances of this case, so relate back to the alleged or apparent indebtedness of 1857, as to defeat rights which were *bona fide* acquired by the grantees of the wife in 1858.

In the conclusion that the judgment must be affirmed, all the members of the court concur. But Justices WRIGHT and COLE base their concurrence largely upon the fact, that for the note of 1857 Greene and Weare held independent security which they released in 1859, after the rights of the children had in good faith been acquired, and after Weare had constructive if not actual notice of these rights.

Aside from this element in the case, they are not prepared to say but that the judgment of 1862 (though upon a note given in 1859) did so relate back to the note of 1857, as conclusively to determine the binding force and validity of that note, not only between the parties to that judgment, but also as to the voluntary grantees of the wife. The decree below is accordingly

Affirmed.