Judge Simmon
delivered the opinion of the Court.
The act of 1796, subjecting estates held in trust to the payment of debts, has no application in a case of this kind. The deed vests in the wife a separate estate, which belongs to her, exclusive of her husband, and which in many respects is entirely dissimilar to other estates that are held in trust. (Sharp vs. Wickliffe, 3 Littell, 12.)
As a general rule, a married woman cannot, according to the common law, contract as a feme sole, nor as such sue or be sued. That being the legal rule, courts of equity acting in conformity with it, have held that the wife cannot bind herself personally, nor bind her separate estate, by her general personal engagements. If, therefore, the wife contracts debts generally, without doing any act indicating an intention specifically to charge her separate estate with the payment of them, a court of equity will not direct an application of such estate to be made for that purpose. (2 Roper, side page, 235 ; Coleman vs. Woolley's ex’r, 10 B. Mon., 320.)
Courts of equity, however, as a consequence of the doctrine established by them, that a married woman may have and enjoy separate estate, enable her to deal with it, and to alien or incumber it, when she shows an intention so to dispose of it, but that intention must be manifested by her, otherwise her separate estate will not be held liable. Its liability for her debts does not arise out of their creation merely. *487 but out of an agreement by her, either express or implied, that it shall be liable for their payment.
4. The execution of anote, or endorsement of a bill of exchange has been regarded as manifesting an intention by a feme covert to charge her separate estate. (7 B. Mon., 293; 13 lb., 384.)
5. Land, the separate property of a feme covert, cannot be made liable to satisfy debts created by verbal contracts. She cannot alien by parol, nor can she charge it by parol contract, (2 Atkins, 379,) otherwise in respect to her personal estate, where the charge will be limited by the intention to charge it.
It has been held by this court, that the execution by a feme covert of a bond or a promissory note, or the endoi-sement by her of a bill of exchange, should be regarded as a sufficient indication of her intention to charge her separate property with the payment of the debt. In such cases, although no reference be made to her separate estate, the execution of the security is deemed to be an implied agreement on her part that it shall be liable for the demand. (Jarman, &c., vs. Wilkerson, 7 B. Mon., 293; Bell & Terry vs. Kellar, 13 B. Mon., 384.)
The extent to which her separate property may be subjected to the demands of creditors, claiming under parol agreements, has not been determined by this court. So far as the separate property consists of land, it cannot be made liable by a verbal contract. The wife cannot alien or dispose of her real estate except by a written agreement, and as a charge upon it for the payment of debts operates as a disposition of it pro tanto, it can only be created by a contract in writing. (Clark vs. Miller, 2 Atk., 379.) But with respect to her other separate estate, consisting of personalty and slaves, where she has verbally agreed that part of it shall be appropriated to the payment of a debt which she is about to create, there seems to be no good reason why this agreement should not be regarded as constituting a charge upon it. Where, however, a verbal agreement is made, without any reference to her separate estate, then it will not be bound, unless the circumstances are sufficient to prove that, in fact, the understanding between her and the person with whom she has contracted. was that it should be liable. But where there is no express agreement, and one arises only by implication, a court of equity will not allow such implied agreement to extend to any except that part of the estate which, it may be inferred from the cir *488 cumstances, the wife intended to charge with the payment of the debt.
6. The trustee holding the title to the separate l estate of the wife cannot charge the same with her debts— her consent is indispensable.
Now, applying these principles to the demands asserted in the present suit, and the right of the creditors to any relief is very questionable. No express agreement by the wife to charge her separate estate for the payment of these debts, was either alleged or proved. The mere fact 'that they were contracted by her, does not, as we have seen, render her separate estate liable for their payment. Were they, then, contracted under such circumstances as will justify the presumption that the contracting parties understood that they were to be a charge upon her separate property? The wife did not, when the debts were created, live apart from her husband, nor is it shown that he was insolvent. The only circumstance from which it can be inferred that an understanding existed, both on her part and the part of the creditors, that the debts were to some extent to be a charge upon her separate estate is, that the accounts were created in the name of the trustee, as may be presumed with her knowledge and consent, inasmuch as she executed receipts to him for some debts which had been created in the same manner, and had been paid by him. The agreement of the trustee that her separate property should be liable for the debts, cannot create any charge upon it. Her own contract is indispensably necessary for this purpose, and such a contract on her part can only be implied in this case from the fact that she knew her creditors looked to her separate property for the payment of their debts, and with this knowledge continued to deal with them, and permitted her trustee to pay the debts thus contracted by her, out of her estate. On this ground, we think her separate estate should be chargeable with the payment of these debts.
But the question still arises as to how far a court of equity will extend this implied agreement by her, that her separate estate should be liable for the payment of these debts. They were all created merely *489 for the current expenditures of the family; none of them arose out of a contract for the purchase of land or slaves, or for any property but such as would be consumed in the use. 'It cannot be presumed, in the absence of any express agreement to that effect, and without the execution of a security in writing, that she intended to create a charge on the principal of her estate, and subject it to sale for the payment of store accounts and other current family expenditures. The only reasonable and legitimate presumption is that she intended the profits of her estate to defray her current expenses, and a court of equity should not carry the implication against her to any greater extent. If parties deal with a married woman, without any express contract in reference to her separate property, they have no reason to complain if, in furnishing her with articles for consumption merely, they are restricted to the profits of her estate, and are not permitted to subject the estate itself to sale for the payment of their demands.
It is true, that in this case the defendant has been improvident, having in less than two years incurred a debt of some four thousand dollars, when the annual profits of her estate did not probably exceed some five or six hundred. But her trustee, instead of checking this improvidence on her part, seems rather to have encouraged it, by advancing her money, paying off her bills, and taking receipts from her for the whole of it. From these acts of his, she may have inferred that the profits of her estate received by him were sufficient to meet all these disbursements, as he only required her to execute receipts to him as her trustee, and never intimated to her that a sale of any part of her separate estate would be necessary for their payment. He clearly has no claim against any part of her estate except the profits. It cannot be presumed that by executing receipts to him for money, she intended to charge any part of her estate but that which came into his hands as money. He could not, by the terms of the trust, convert any part *490 of the trust estate into money, except the profits. — ■ If any of the property itself were sold, the proceeds were, by the terms of the trust, to be re-invested, and the property purchased was to be subject to the same restrictions and limitations that the property sold had been subject to. The trustee, to put the most charitable construction on his conduct, acted with great indiscretion, and without a due regard to his duty, in creating a debt against his cestui qui use, exceeding very considerably the profits of her estate, and that in a manner which was calculated to induce her to believe that he had the money in his hands, and only wanted her receipts to show how it had been appropriated. Under these circumstances, it is equitable and just that the payment of his debt should be postponed, without interest, until the debts due to the other creditors be paid out of the hires of the wife’s slaves.
No part of the wife’s separate property, except the hire of the slaves, is to be subjected to the payment of any of the demands asserted in this suit.— These hires must be first applied to the payment of such debts, excluding that due to the trustee, as was contracted by the wife, or by her order. For these debts no personal decree should be rendered against the wife, but the decree for their payment should be in rem against the profits of her estate, the land excepted. They should be paid ratably out of the annual profits until they are discharged ; and then these profits should be applied to the payment of the debt due to the trustee. The profits of the land are not subjected, because a disposition of the anticipated profits of real estate, is substantially a disposition of the estate itself, during the time that the profits are disposed of, and a contract to effect that object must be in writing. Besides, in creating an implied agreement on the part of the wife to charge the profits of her separate estate, it ought not to be presumed that she intended to divest herself entirely of all means of support; and for this reason, also, *491 this implied agreement should not be extended to the profits of her real estate.
7. Where infants appear in court, on their own petition, to be made parties, process is not necessary; that the court appointed a guardian ad litem to answer, was sufficient.
With respect to the errors assigned by the infants on the writ of error sued out by them, none of them seem to be available, except the one relating to the merits of the decree. As they were made parties upon their own petition, they were in court, and the service of process upon them was unnecessary. A guardian ad litem was appointed for them by the court, and their answer was filed by him. If it had been proper to decree a sale of their mother’s life estate in the slaves, their interest in remainder was as well guarded and secured by the decree as it could be, and they were not prejudiced by the omission to give day to show cause against it. But a sale of the life estate was more prejudicial to them than the annual hiring of the slaves would be, because their estate in remainder will be in less jeopardy, and be subjected to less hazard, from the latter, than it would be from the former mode of subjecting it to the payment of these debts. The purchaser of the life estate might remove the slaves to parts unknown, and he and his security in the bond, which he vvas required to execute to have them forthcoming, might both become insolvent before the expiration of the life estate. This hazard will not be incurred when the slaves are only hired by the year, so that the decree, as rendered, was prejudicial to the children, as well as to their mother.
As the wife has the right to sell her estate for life in any of her separate property, she may do so if she thinks proper, for the purpose of creating in that way a fund for the payment of these liabilities, instead of having them discharged in the manner pointed out in this opinion.
Wherefore, the decree is reversed upon the appeal taken by the husband and wife, and also upon the writ of error prosecuted by the children, and cause remanded with directions to ascertain what amount of the debts sued for were contracted by the *492 wife, or by her order, and forfurther proceedings and decree in conformity with this opinion.