## WILLIAM BATCHELDER *v.* FIRENA SARGENT.

A married woman is liable upon her promissory note given for the price of neat stock purchased by her during marriage for the use of a farm, of which she was seized to her sole and separate use.

ASSUMPSIT on a promissory note signed by the defendant.

Defence, that the defendant at the time of the making and giving said note was a married woman.

The parties agree upon the following statement of facts:

At the time of the making and giving of said note, the defendant was, and still is, the wife of Samuel Sargent. At that time she was the owner of a farm in Canterbury, on which she and her said husband then, and ever since have resided. Said farm was conveyed to her, several years previously, to her sole and separate use, free from the interference and control of her said husband.

The note in suit was given for the price of certain neat stock at that time bought in the name of the defendant, and by her authority, for use on the farm aforesaid, and which was taken and used accordingly on said farm.

*Foster & Sanborn,* for plaintiff.

The note in this case is dated Jan. 20, 1858, and the law applicable to the same is to be found in the 327th chapter of the Laws of 1846, secs. 14 and 15 of chap. 158 Comp. Stat.

By section 15, married women holding property in their own right, *"in respect to all such property,"* have the same rights and are subject to the same liabilities as though sole.

The only question in this case is, whether the contract which is the subject of this suit, was "in respect to such property" thus held by the defendant.

In *Bailey* v. *Pearson,* 29 N. H. 87, where this subject was considered, the court say, "so far as the property itself is concerned she may make contracts in regard to the same, which may act upon it,   *   *   * and may make contracts and incur liabilities connected with and growing out of that property, but not farther."

That the defendant could have leased or sold the property so held by her seems perfectly clear.   It would also seem clear that she could make valid contracts for its cultivation and improvement, for the repairs of the buildings, fences and the like.   If she chose to carry on the farm herself her contracts for labor for this purpose would cause her to "incur liabilities connected with and growing out of the property."   If, then, the employment of labor for the cultivation of the farm would cause her to incur a legal liability, it would seem that a similar liability could be incurred for agricultural tools and implements, &c., proper for such cultivation, in which would necessarily be included the neat stock and other animals kept and used upon the farm.

*Minot & Mugridge,* for defendant.

The statutes authorizing conveyances to married women include personal as well as real estate.   Compiled Statutes, ch. 158, secs. 13 and 15 authorize contracts in respect to such property.

The note in suit cannot be sustained on the ground that the neat stock for which it was given, was purchased by the wife for her own property. *Ames* v. *Foster,* 42 N. H. 381, is directly in point.

The only ground on which the plaintiff's counsel claims to sustain it is, that the neat stock was purchased by the wife for use on the farm she then owned.   But we submit that it cannot be sustained on that ground.

It is not sufficient under the statute referred to, section 15, that the contract be made with a collateral reference to the property.   It must relate directly to it.   *Ames* v. *Foster,* above cited; *Albin* v. *Lord,* 39 N. H. 202; *Bailey* v. *Pearson,* 29 N. H. 87.

In the present case the contract between the parties related only to the neat stock.   The future use of the stock, intended by the defendant, formed no part of the contract with the plaintiff, even if then known to him.

The contract did not relate to the farm or to anything which could in any way afterwards legally become or be made a part of it.   Neat stock

may be very useful on a farm, but it cannot in law be made a part of it. When purchased and placed on the farm it does not become appurtenant to, or connected with it, but still remains separate and distinct property. It is otherwise with repairs and improvements, which become a part of the property itself.

Any supposed equities of the case do not alter the law. *Shannon* v. *Canney*, 44 N. H. 592.

BELLOWS, J. The decision of this case must turn upon the question whether the note is to be regarded as a contract made in respect to the farm, for the use of which the stock was bought, within the meaning of the law of 1846, ch. 327, sec. 4; Comp. Stat. ch. 159, sec. 15.

Under this statute it has been settled that the note of a· married woman given upon a contract not relating to the property held to her sole use, cannot, in a suit at law, be recovered, *Bailey* v. *Pearson*, 29 N. H. 79; that a married woman may lease such property, even to her own husband, *Albin* v. *Lord*, 39 N. H. 196; and that no action can be maintained against a married woman upon a promissory note given for money borrowed to pay the price of land to be conveyed to her for her sole and separate use; *Ames* v. *Foster*, 42 N. H. 581. This decision is put upon the ground that the power of the wife to bind herself by her contracts under this statute exists only where she at the time holds property to her separate use, and where the contract relates to such property, and therefore that she could not bind herself for recovery in anticipation of the purchase of such separate estate.

The question before us, then, is not touched directly by any previous decision, and it becomes necessary to give a construction to the statutes on this point.

By section 2 of the law of 1846, ch. 327, married women are empowered to take, without the intervention of trustees, any real or personal estate conveyed, devised, or bequeathed to them, to their sole and separate use, and to hold, possess, and enjoy the same accordingly; and by section 4 of that act, it is provided that they shall, in respect to all such property, have the same rights and remedies in their own names, and be liable to be sued upon any contract made or wrong done by them in respect to such property, both at law and equity, in the same manner and with the same effect as if they were unmarried—thus putting them in respect to such property upon the same footing as if sole.

They may, therefore, sell, lease, mortgage, cultivate and improve, or otherwise manage and dispose of such lands, in the same way and manner as if unmarried; and such is the doctrine of *Albin* v. *Lord*, 39 N. H. 202. It must follow, of course, that they may bind themselves to pay for the means of repairing the buildings and fences, and making improvements of the estate, and for the necessary labor and expenses in its cultivation; and also, we think, for such tools and other farming implements, and such stock of cattle, horses and other animals, as may be needed for the cultivation of the estate in a profitable and husbandlike manner.

That a married woman may herself carry on a farm held to her sole

and separate use, can admit of no doubt, and this implies the power to contract for the necessary means of stocking it in a suitable· manner; for without it she could not carry it on at all.    Such a contract must, therefore, be regarded as made in respect to the property so held.    As to *that* she is put by the statute in all respects upon the footing of a *feme sole,* and there is nothing in that statute, or in the policy of our legislation, that indicates a purpose to withhold from her the powers which others enjoy in the disposition and management of similar property.

These provisions of our statutes are, after all, but modifications of well established doctrines of equity in respect to the contracts of the wife who holds property to her separate use.    At law, it is true, she could not bind herself or her property by a contract made during coverture, except as a trader by the custom of London; or where her husband had abjured the realm, or was civilly dead.    In the celebrated case of *Corbet* v. *Podnitz,* 1 T. R. 5, it was held that a wife having a separate maintenance and living apart from her husband, was liable at law on her contracts as a *feme sole.*    This case, however, was repeatedly questioned, and the contrary doctrine at length established in the case of *Marshall* v. *Rutton,* 8 T. R. 545.

In equity it has been for a long time well settled that a married woman, holding property to her sole and separate use, is so far to be regarded as a *feme sole* in respect to such property, that she may dispose of it as she pleases; and as incident to that power may charge it with her debts contracted during coverture; unless, indeed, there be something in the deed or gift to restrict her.    If in contracting the debt the intention to charge her separate estate is manifested, courts of equity will enforce payment out of that estate; and it seems now to be settled that such intention will be inferred where she contracts a debt during her marriage by bond, bill, or note, or other express contract in writing, upon the ground that unless it be so held such contract would be totally inoperative.    In respect to implied promises of the wife, and promises not in writing, there has been some conflict in the authorities, many of the more modern cases holding that there is no solid ground for any distinction, and that courts of equity should decree payment of both classes of debts out of her separate estate.    Among these cases are *Owens* v. *Dickinson,* 1 Craig & Phillips 48, 52 and 54; quoted in 2 Story's Eq. Jur. 1397, note 1.    *Murray* v. *Barlee,* 3 Mylne & Keen 209, where there was an able opinion by the Lord Chancellor Brougham, affirming the opinion of Vice Chancellor Shadwell in the same case, reported in 4 Simons 82.    The opinion of Lord Brougham is quoted at some length in 2 Story's Eq. Jur. sec. 1400, note 1.    To the same effect are *Orley* v. *Kelheimer,* 26 Ala. 332; *Buck* v. *Breckinridge,* 16 B. Mon. 482, and *Greenough* v. *Wigginton,* 2 Greene, Iowa, 435.

The general subject is discussed and the authorities collected in 2 Story's Eq. Jur. secs. 1399, 1401; Clancey on Husband and Wife, ch. 9; 2 Kent's Com. 9th ed. 156, sec. 164, *et seq.,* and notes; *Methodist Episcopal Church* v. *Jaques,* 3 Johns. Ch. 77; modified on error as reported in 17 Johns. 548; *Holme* v. *Tenant,* 1 Bro. Ch. 14, and notes; 1 Mad. Ch. 473–4.

It will be observed, however, that these debts are a charge only upon the wife's separate estate, and that she is in no case personally bound even in equity. The great change, by our statute, is to enable her to hold such property without the intervention of a trustee, and to make her liable at law personally, as well as her estate, for debts contracted by her in respect to it.

As the general engagements of the wife, all those at least which take the form of bonds, bills or notes, would, by a decree of a court of equity, be satisfied out of her separate estate, debts contracted in respect to such property would of course be included. Among the cases of that kind is *Gardner* v. *Gardner*, 22 Wend. 526, where a court of equity decreed satisfaction out of the wife's separate estate of a bond given by her to the husband for money borrowed to erect or complete buildings upon that estate; and also *Murray* v. *Barlee*, 3 Mylne & Keen 209, before cited, where payment out of her separate estate of a solicitor's bill was decreed. In some of the cases, in discovering the intention of the wife to charge her separate estate, stress has been placed upon the fact that the debt was contracted for the benefit of such estate. *Yale* v. *Dederer*, 22 N. Y. 450.

From this statement of the doctrines of courts of equity, it is apparent that to hold the wife liable for the price of cattle purchased to stock her farm is no extension of her former liability, except so far as it binds her personally; and that is clearly contemplated by the statute.

The power to hold property to the wife's sole and separate use necessarily implies a power to hold whatever is essential to make that use beneficial; such as farming tools, stock, and the like; and as incident to holding such tools and stock, must be the right to purchase them and pledge her credit for the price. To hold that she could not so pledge her credit would go far to deny her right to hold them, as against her husband.

The conclusion we have reached is also, we think, in accordance with the clearest dictates of justice. The wife has used her credit to stock her farm, and she enjoys the benefit of it; and a decision which should discharge her from the obligation to pay for it, would not only be painfully unjust and productive of much mischief in that direction, but would, we are persuaded, be inconsistent with the policy of our legislation, which is to place the wife in respect to such separate property upon the footing of a *feme sole*.

To decide that she is not liable for property so purchased in any form, and at the same time to enable her to hold it against the seller, would arm the husband and wife with a power for mischief that could not have been contemplated by the framers of this law. There must be, therefore,

*Judgment for the plaintiff.*